EDWARD A. MURPHY AND CYNTHIA L. MURPHY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2945–69SC.   Filed February 11, 1970.

Edward A. Murphy, pro se.
*Kimball K. Ross,* for the respondent.

---

OPINION

The sole issue which we must decide is whether the $875 paid to the agency, a qualified charitable organization, during 1966 constituted a charitable contribution within the meaning of section 170.[2]

Petitioners argue that their payment to the adoption agency constituted a charitable contribution deductible under section 170, because (1) "it was based upon [Edward's] income and was not in any way tied to expenses incurred or services rendered by [the agency] in [the] adoption," (2) "[it] was a free-will gift," and (3) "[t]he adoption of Amy Beth Murphy was not contingent upon [the] contribution." Respondent, to the contrary, asserts that the payment was made to the agency in exchange for its services and was not a charitable contribution.

The meaning of the term "charitable contribution" for purposes of section 170 is clearly set forth in our opinion in *Harold DeJong*, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (C.A. 9, 1962):

As used in this section the term "charitable contribution" is synonymous with the word "gift." * * * A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift. * * *

Clearly, "not every payment to an organization which qualifies as a charity is a charitable contribution." *Estate of Willis D. Wood*, 39 T.C. 1, 6 (1962). See, e.g., *James A. McLaughlin*, 51 T.C. 233 (1968), affirmed per curiam — F.2d — (C.A. 1, 1969); *Harold DeJong*, *supra*; *Channing* v. *United States*, 4 F. Supp. 33 (D. Mass. 1933), affirmed per curiam 67 F. 2d 986 (C.A. 1, 1933); payment for tuition to a nonprofit education organization is not a charitable contribution; *John J. L. Ryan*, T.C. Memo. 1969–212; Rev. Rul. 67–246, 1967–2 C.B. 104; payments in connection with admission to or other participation in fund-raising activities for charity are not charitable contributions to the extent such payments do not exceed the fair market value of the

---

[2] SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(a) ALLOWANCE OF DEDUCTION.—

(1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowed as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

* * * * * * *

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

* * * * * * *

(2) A corporation, trust, or community chest, fund, or foundation—

* * * * * * *

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

privileges or other benefits received; and *Estate of Willis D. Wood, supra*, transfer of securities to a church in trust to provide for perpetual care of transferor's plot in the church cemetery is not a charitable contribution.

Similarly, payments which are in fact adoption fees *"for services to cover part of the cost of operating an adoption program"* do not constitute charitable contributions. *Archibald W. McMillan*, 31 T.C. 1143, 1147 (1959). (Emphasis added.) See and compare *Wegner* v. *Lethert*, an unreported case (D. Minn. 1967, 19 A.F.T.R. 2d 790, 67–1 U.S.T.C. par. 9229), where a payment to a qualified organization which had assisted (apparently without charge) the taxpayer in the adoption of a child was held to be a charitable contribution.

It is well established that payments to an organization which qualifies as a charity are deductible as a charitable contribution under section 170 only to the extent the amount thereof exceeds the fair market value of any material benefit received in return.

The evidence herein shows that at least some portion, if not all, of the payment made by the petitioners in 1966 to the agency, regardless of what it may be called, was in fact an adoption fee, given in exchange for the agency's services which were indispensable to the petitioners' adoption of Amy Beth. These services constituted a return benefit or consideration accruing to the petitioners. In short, the payment, to the extent it was for services rendered by the agency, does not constitute a charitable contribution since the petitioners received something of value in return. *Archibald W. McMillan, supra.*

Petitioners argue that contributions to churches and other charitable organizations by a member thereof are treated as charitable contributions, even though the member receives services or other benefits in return. Reasoning by analogy, they conclude that their payment to the adoption agency constituted a charitable contribution despite the fact that the agency provided services to them in connection with the adoption of Amy Beth. The difficulty with this argument is that it fails to perceive the substantial differences between the more direct benefit they received from the agency and the indirect benefits to the member of a church or other charitable organization. In the latter situation the benefits are merely incidental to making the organization function according to its charitable purposes and the only return benefit is the satisfaction of participating in the furtherance of its charitable or religious cause. Such privileges, we think, are not significant return benefits that have a monetary value within the meaning of section 170. On the other hand, the services received by petitioners from the adoption agency were of a significant and direct benefit to them because such services were indispensable to, and in furtherance of, petitioners' purpose in adopting Amy Beth.

Petitioners' argument that the adoption of Amy Beth was not contingent upon their paying the agency 10 percent of Edward's annual income is not supported by the record. Although they may have been led to believe that the adoption was not contingent upon their paying a fee, the agency, as we view the evidence, did in fact require the petitioners to pay a fee as a prerequisite to its placing Amy Beth in their home for adoption. The agency during 1966 required payment of a fee from those adoptive parents who could afford it as a prerequisite to the placing of a child for adoption. This, taken in conjunction with the petitioners' concession at trial that they were financially able to make such a payment, leads us to the conclusion that the payment in question was required by the agency as a prerequisite to placing Amy Beth in the petitioners' home for adoption. The agency considered the amount charged adoptive parents, such as the payment by petitioners herein, to be a "fee for professional services rendered" and not a contribution, as it was considered prior to 1966. The receipt given to the petitioners in August 1966 upon payment of the $875 indicates that such amount represented a fee for services and not a contribution. We think all of these factors establish that some portion, at least, of the total payment by petitioners was an adoption fee required by the agency as a prerequisite to its placing Amy Beth in their home for adoption.

The fact that the amount of the payment petitioners made was based on the seemingly unrelated and thus fortuitous factor of their ability to pay does not augur against our conclusion that at least some portion of such payment was a fee for services. Since the amount paid by adoptive parents to the particular adoption agency is determined on the basis of the adoptive father's annual income, there may well be a discrepancy between the amount paid and the value of the agency's services received in return. Whenever this discrepancy is so great as to make it reasonably clear that the payment is of a dual character, we believe consideration should be given to the possible separation of that portion of the total payment that may properly be treated as a charitable contribution under section 170 and that portion that may be treated as a nondeductible adoption fee under the *Archibald W. McMillan* opinion. Petitioners, however, have failed to show any discrepancy between the amount paid to the agency in 1966 and the value of the services they received.

To prevail petitioners must show that the amount paid in 1966 exceeded the value of the services rendered by the adoption agency and that such excess was intended as a gift. On this record they have provided no evidence to establish the value of the services they received. Consequently, they have not shown that any portion of the payment exceeded the value of the services received in exchange therefor.

Accordingly, we are constrained to hold that the petitioners have not sustained their burden of proving that they are entitled to deduct any portion of the amount paid in 1966 to the adoption agency as a charitable contribution under section 170.

*Decision will be entered for the respondent.*