**Ruth K. DOWELL, Individually and as Executrix of the Estate of H. B. Dowell, Deceased, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 75–1912.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 14, 1977.

Decided April 28, 1977.

Leonard J. Henzke, Jr., Tax Div., Dept. of Justice, Washington, D. C. (Gilbert E. Andrews, Tax Div., Dept. of Justice, and Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., on the brief; Nathan G. Graham, U. S. Atty., Tulsa, Okl., of counsel), for appellant.

James L. Kincaid, Tulsa, Okl. (J. Denny Moffett, Tulsa, Okl., on the brief), for appellee.

Before SETH and BARRETT, Circuit Judges, and KERR, District Judge.*

BARRETT, Circuit Judge.

The United States, through the Commissioner of Internal Revenue Service (IRS), appeals the findings, conclusions and judgment of the district court, following trial without jury, awarding plaintiff-appellee Ruth K. Dowell (Dowell), individually and as Executrix of the Estate of H. B. Dowell, Deceased, $3,648.03, representing refund of additional tax and interest paid. The award equals a deficiency assessment imposed by IRS against Dowell and her late husband following filing of their joint federal income tax return for the year 1971. Jurisdiction is conferred by 28 U.S.C.A. § 1291.

The issue presented is whether a "sponsorship gift" of $22,500.00 made by Dowell on February 25, 1971, to Oral Roberts Evangelistic Association, Inc., of Tulsa, Oklahoma, is a charitable contribution deductible under Section 170 of the Internal Revenue Code of 1954, 26 U.S.C.A., § 170. The Code allows a deduction from gross income (if deductions are itemized) for any charitable "contribution or gift" to or for the use of a corporation "organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes." 26 U.S.C.A., § 170(c). The gift here involved was made to the parent corporation of Oral Roberts University, Inc., and University Village, Inc., also of Tulsa, Oklahoma. Each of the corporations qualifies under § 170 of the Code.

Some basic rules governing our review should be observed before reciting the facts of this case. A case cannot be presented de novo on appeal. When a case is tried to the district court, the resolution of conflicting evidence and the determination of credibility are matters particularly within the province of the trial judge who heard and observed the demeanor of the witnesses. *United States v. 79.95 Acres of Land, etc., Rogers Co.,* Okla., 459 F.2d 185 (10th Cir. 1972); *Davis v. Cities Service Oil Company,* 420 F.2d 1278 (10th Cir. 1970). The appellate court is not called upon to determine whether the trial court reached the correct conclusion of law, but rather whether it reached a permissible conclusion in light of the evidence. *Kelly v. Layton,* 309 F.2d 611 (8th Cir. 1962). The findings of a trial court will not be reversed on appeal unless they are clearly erroneous. *Burgert v. Tietjens,* 499 F.2d 1 (10th Cir. 1974). This rule applies to findings and conclusions involving mixed questions of fact and law. *Hinde v. Hot Sulphur Springs,* Colorado, 482 F.2d 829 (10th Cir. 1973); Fed.Rules Civ.Proc., rule 52(a), 28 U.S.C.A.

Dowell, then 76 years of age with developing cataracts and the prospects of surgery, and her aging, infirm husband, had determined in late 1970 to sell the family home in Tulsa and move into an adequate retirement center. Her husband required personal care and attention. Dowell had heard of University Village and in January, 1971, her daughter drove her to the facility where she visited with one Dan P. White about the accommodations, the financial aspects and the application for admission. White testified that he was sure that he told Dowell of the "sponsorship gift" which was in all such cases requested, although

* Of the District of Wyoming, sitting by designation.

not required, as a condition or requisite for admission or continued residency. Dowell testified that she has no recollection of discussing a "sponsorship gift" with White or anyone else at University Village. She was at no time aware that any gift was required for residency.

On January 26, 1971, Dowell submitted her application for residency to University Village, after thoroughly inspecting the facilities and evaluating the accommodations, care and comfort. Mr. Dowell was to reside in the Health Center. On February 11, 1971, Dowell received a letter advising that she and her husband were accepted as residents of University Village. On February 25, 1971, Dowell submitted a check in amount of $22,500.00 payable to Oral Roberts Evangelistic Association, Inc. On March 26, 1971, Dowell moved into Cottage 16D at University Village, Inc. and on April 2 she signed a residency agreement with the Village whereby she agreed to pay a per month rental of $165.00 and additional amounts for other services. She paid $400.00 to $600.00 per month for her husband's health care.

Oral Roberts Association loaned University Village the amount by which construction costs of the Village exceeded the funds obtained from a Tulsa bank, secured by a first mortgage. University Village seeks to repay the funds borrowed for construction by means of the "sponsorship gifts" of the cottage and apartment units. The Village is designed to provide for the needs of those who reach retirement age. The Village prepares and widely distributes a brochure which acknowledges that the monthly rental and other charges are intended simply to cover current operating expenses, while the "sponsorship gifts" program is aimed at repayment of the monies borrowed for construction. The brochure explains: that the monthly charges do not include provisions for amortization of the loans and depreciation; that while a "sponsorship gift" is not a prerequisite for residency, it is requested; that a "sponsorship gift" does not entitle the donor to any "property rights"; that a Standard Agreement for Residency is exe-

cuted with all residents covering their *lifetime care* "and is entirely separate and apart from any gift consideration." The record reflects that through March 1, 1975, the Village received "sponsorship gifts" totalling $4,844,604.00 and, of this amount, $4,322,712.00 or 89 percent was received from residents and $521,892.00 or 11 percent from relatives and friends of residents and from non-residents. As of March 1, 1975, the Village records revealed that: 40 of the residents made "sponsorship gifts" in whole or in part before their application for residency was accepted; that about 224 residents made the "sponsorship gift" in the full amount suggested for the cottage or apartment they rented; that some 16 residents gave more than that suggested; and that some 63 residents gave nothing or less than the suggested gift. The Village records reflect that relatives of 15 of the residents made the "sponsorship gifts" and that 11 of the residents made "deferred gifts" which, because they are not in cash or its equivalent in value, may be indeterminate and are not treated as "sponsorship gifts" by the Village. Of the 19 residents who moved out of the Village prior to March 1, 1975, 12 received either a full or partial refund of their "sponsorship gift."

Dowell testified that her primary concern, after viewing the Village facilities, was to obtain occupancy for herself and her husband because of the desirable accommodations, the general surroundings in the Village and the care and treatment her husband would receive. She further testified that she made the "sponsorship gift" because she wished to do so; she felt no duress to do so; she does not recall that anyone told her that such a gift was required for admission; she was not promised anything in return for the gift; while she knew of a possible tax deduction for the gift, this was not a consideration on her part and she would have made the gift without any deduction because of the building, the care she would receive and the life she could live in the Village and because of the good works of the Oral Roberts Association; she was never told that a "sponsorship gift" was required as a prerequisite to

residency or continuing residency at the Village; not only did she not believe that a "sponsorship gift" was required for residency, but she was unaware of and therefore did not expect to receive lifetime care from the Village in exchange therefor; she made the gift out of charity and generosity knowing that her gift would help others; and she did not anticipate receiving any benefits from the gift nor did she expect that any part of the gift would ever be returned to her.

University Village, Inc. is uniquely designed, planned and managed for the elderly. It maintains five types of facilities to accommodate the residents, varying in design and utility from those for the bedridden to those for the physically mobile and independent. The rental and other charges do not repay the construction costs. The "sponsorship gifts" as suggested in the brochures of University Village, Inc., are essential to such construction cost repayments and are consistent with Oral Roberts' fund raising philosophy; that no applicant for residency is told or required to make a sponsorship gift as a condition for admission; monthly rentals are not reduced or modified for a gift made, and are the same (per unit charge) for all admittees.

The trial court found, *inter alia*: that although the brochures distributed by the Village to prospective applicants suggest a "sponsorship gift" that it is clear that none is required; that Dowell's testimony aforesaid established a prima facie case, which was not refuted or overcome by IRS; that of the total residents admitted to Village, (a) 13 or 2.5 percent made partial gifts, (b) 46 or 8.98 percent made no gifts, (c) that 16 or 3.1 percent gave more than the suggested gift amount, and 63 or 12.3 percent gave less, (d) that 24.38 percent either made no gifts, gifts of more than the suggested amount, or gifts of less, so that nearly one-fourth of the residents did not give the suggested sponsorship gift. Based upon the totality of its findings and consideration of the legal arguments of the litigants, the trial court concluded that the evidence compelled a conclusion that the "sponsorship

gift" of Dowell was a charitable contribution under § 170, *supra*; that the Dowell gift was not made in consideration for lifetime housing, care or any other benefits from the Village; that the Dowell "sponsorship gift" was made out of a detached and disinterested charitable and generous purpose; and that the true nature of Dowell's purpose, considering all of the facts and circumstances, was charitable in nature to the exclusion of any quid pro quo benefits.

We deem it significant to observe that the trial court's conclusion and judgment in the case at bar was confined to the precise facts and circumstances presented. In emphasis, the trial court pointedly stated: "In reaching this decision, [to permit the parties to present all evidence admitted under any possible theory of law] . . . the Court [permitted] . . . both parties to make a full and complete record to support their respective arguments . . . In accordance therewith, the Court has considered all of the evidence presented herein and the Court renders the conclusions herein on that basis." [R., Vol. I, p. 212.] We agree with the trial court's statement that the parties were given every consideration. The Court was most patient in extending to the parties all of the time they required in presenting the evidence and legal issues. The voluminous record on appeal attests to this fact.

On appeal, IRS contends that the trial court erred in holding that the Dowell "sponsorship gift" is deductible as a charitable contribution under § 170, *supra,* in that: (a) the evidence establishes that there was a "quid pro quo" or other significant relationship between the gift and Dowell's receipt of substantial material benefits and, (b) as a matter of law there is a significant relationship between gifts made under University Village's sponsorship gift program and Dowell's receipt of substantial residency benefits.

I.

We emphasize, just as did the trial court, that our disposition of this appeal is predicated entirely on the facts in evidence and

the circumstances reflected in the record of *this case.* With that in mind, we deem the critical issue to revolve around donative intent.

§ 170(a), *supra,* allows a deduction for "charitable contributions." It is firmly established that a gift is a voluntary transfer of property without consideration, and that if a payment or transfer of other thing of value is made in anticipation of a benefit other than the personal satisfaction of having performed the act of generosity, the transaction is not a gift. *Commissioner of Internal Revenue v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). Such a gift has also been said to be out of affection, respect, admiration, charity . or like impulses. *Commissioner of Internal Revenue v. LoBue,* 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956). A transfer does not, then constitute a gift for deductible purposes if it is made "in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming." *Stubbs v. United States,* 428 F.2d 885, 887 (9th Cir. 1970), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971). *See also: Wardwell's Estate v. Commissioner of Internal Revenue,* 301 F.2d 632 (8th Cir. 1962); *Johnson v. Commissioner of Internal Revenue,* 86 F.2d 710 (2nd Cir. 1936); *Jackson v. Commissioner of Internal Revenue,* 64 F.2d 359 (4th Cir. 1933.)

Motivation and personal expectation do not destroy the reality and genuineness of a given transaction even in a tax case. *Gallun v. Commissioner of Internal Revenue,* 297 F.2d 455 (7th Cir. 1961). And contributions or gifts to charities "cannot be controverted into a payment for services by inaccurately describing it." *Bogardus v. Commissioner of Internal Revenue,* 302 U.S. 34, 44, 58 S.Ct. 61, 66, 82 L.Ed. 32 (1937).

Thus, the basic, fundamental consideration in this case, freely recognized by the trial court, involves the determination of Dowell's *intention.* We must be alert to the rule that there is a clear distinction between the motive for entering into a contract and the consideration for the contract. *Philpot v. Gruninger,* 14 Wall. 570, 81 U.S. 570, 20 L.Ed. 743 (1871). A decision, then, as to intent or motive is one reserved for the finder of fact and it is not to be disturbed unless held to be "clearly erroneous." Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.; *Quarles v. Fuqua Industries, Inc.* 504 F.2d 1358 (10th Cir. 1974). The appellate court may not so conclude unless, from a review of the entire evidence, it is convinced that a mistake has been committed. *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The Commissioner (IRS) has consistently introduced parol evidence to show the circumstances which would invalidate a claimed gift, i. e., return of benefit from the gift, direct or indirect, evidenced by an oral understanding or agreement between the donor and donee. *Johnson v. Commissioner, supra; Jackson v. Commissioner, supra.* Thus, a taxpayer's testimony relative to the circumstances and conditions surrounding a challenged gift transaction is admissible in a fact finding proceeding, to be given such weight as the circumstances from the entire record dictate. *King v. United States,* 545 F.2d 700 (10th Cir. 1976). We are cognizant that such testimony, subjective in nature and inclined to be self-serving in relation to the issue of intent, is suspect. It is for this very reason that the Court, in *Internal Revenue v. Duberstein, supra,* stated that in determining a donor's intention the fact finder must predicate his conclusion upon his experience ". . . with the mainsprings of human conduct as applied to the totality of the facts of each case . . .". 363 U.S., at 289, 80 S.Ct., at 1198. We hold that the trial court did not err in finding that Dowell's purpose, considering all of the facts and circumstances, was charitable in nature qualifying as a charitable contribution under § 170, *supra.*

## II.

IRS urges that, as a matter of law, there is a significant relationship between

gifts made under University Village's sponsorship gift program and Dowell's receipt of substantial residency benefits.

We recognize that this argument "pinpoints" the obvious danger of placing substantial weight upon the subjective intent elicited by testimony of the donor, in light of the self-service urgence. It is precisely because of this motivation that the trial court looked to the totality of all facts and circumstances, together with all reasonable inferences to be drawn therefrom, in finding substantial evidence supporting its legal conclusion that Dowell's "sponsorship gift" qualifies as a charitable contribution.

We hold that there is no justification, from the whole of this record, for reversal of the trial court's findings, conclusions and judgment. There is no evidence of a "quid pro quo" as found in *Stubbs v. United States, supra.* There the taxpayers entered into an agreement to purchase certain property contingent on rezoning which would permit its use as a trailer court and shopping center. In order to assure access to the property to be developed, the taxpayers conveyed a strip of the property for dedication as a public road, without receipt of payment therefor. The anticipated economic gain to the taxpayers was found to be the dominant factor or intent generating the conveyance, thus disqualifying it as a charitable contribution under § 170, *supra.* We have read those opinions which have held gifts disqualified as charitable contributions for federal income tax purposes. They are based on factual findings that the gift was motivated by an agreed, expected or anticipated (a) direct gain or benefit to the donor such as that found in *Sedam v. United States,* 518 F.2d 242 (7th Cir. 1975), and *Wardwell's Estate v. Commissioner, supra,* (b) indirect economic benefits to the donor, and (c) incidental benefits to the donor. We have further considered those decisions disallowing the deduction because the gift was made under economic stress or duress or because of a legal or moral obligation to give. *In each instance, the donor-taxpayer was found to have expected or anticipated the exchange benefit.* Such is not evidenced in the case at bar.

IRS, in a conclusion to its opening brief, states: ". . . it would be an understatement to say that she [Mrs. Dowell] would have been surprised if, after signing the completed $22,500 check prepared by the village . . . , she had been refused entry to the village." [Appellant's Opening Brief, p. 44.] We suggest that the fact that Dowell had been accepted for admission as a resident of the Village facility some two weeks *prior* to the date that she signed the check substantially dispels the possibility of the surprise element. Furthermore, nothing in the record evidences that the Dowell check had been "prepared by the village." While findings and conclusions in cases such as this do involve elements or aspects of surmise and conjecture simply because they cannot be reduced to a quantum of absolute certainty, we nevertheless hold that the IRS is confronted with a trial record which demonstrates that the trial court's judgment is anchored to substantial evidence.

WE AFFIRM.