Maureen A. STAPLES and Michael P. Staples, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 86–1376.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1987.

Decided July 1, 1987.

Eric M. Lieberman, New York City, for appellants.

David M. Moore, Dept. of Justice, Washington, D.C., for appellee.

Before HEANEY, McMILLIAN, and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Maureen and Michael Staples appeal the denial of a federal tax deduction sought for payments made to the Church of Scientology. The tax court, on the authority of *Graham v. Commissioner,* 83 T.C. 575 (1984), held that because the Staples' participation in their church's individualized religious practices was conditioned on the payment of set fees, those payments were not charitable contributions within the meaning of 26 U.S.C. § 170. The First Circuit recently accepted this argument in *Hernandez v. Commissioner,* 819 F.2d 1212 (1st Cir.1987). We, however, cannot agree with the result reached by the tax court, and thus we respectfully diverge from the First Circuit's position.

Scientologists believe that in every person an immortal spiritual being exists independent of body and mind. A Scientologist becomes aware of this spiritual dimension through a process called "auditing." Auditing sessions are conducted individually, but are not individually tailored and are ritualistic in nature. Scientologists also take "courses" in which they study the doctrines, tenets, codes, policies, and practices of the Church, one of the doctrines being that spiritual gains result from this study itself. Participation in auditing sessions and doctrinal courses is conditioned on payment of a set charge, known as a "fixed donation," from a schedule of fees established by the Church for all its activities.

The government has stipulated, for the purposes of this litigation, that Scientology is a religion and that the specific Scientology organization to which the payments were made was a qualified church and religious corporation under subsections 170(b)(1)(A)(i) and (c)(2) and exempt from taxation under 26 U.S.C. § 501(a). The government also has stipulated that the collection of fixed donations as a prerequisite to participation in the essential religious practices of Scientology is the Church's only method of actively soliciting contributions from members. At oral argument the government recognized that under the stipulations the parties agree Scientology auditing sessions and doctrinal courses are bona fide religious practices.

These stipulations are in important respects contrary to the conclusions reached in *Church of Scientology v. Commissioner,* 83 T.C. 381, 443, 473–80 (1984), in which the tax court held that the Church of Scientology of California was not operated exclusively for religious purposes under section 501(c)(3). A contribution to a church not operating exclusively for religious purposes is not deductible on an individual taxpayer's return. *See* 26 U.S.C. § 170(c)(2)(B). The government, however, according to its brief did not wish to await the outcome of the Ninth Circuit appeal in the *Church of Scientology* case to attack payments such as those made by the Staples. The government instead stipulated to the legitimacy of the Scientology church and its religious practices and argues that the Staples' payments, because of their timing, fixed amount, and mandatory nature, were not charitable contributions regardless of the religious nature of the benefit to the Staples. The first case to be submitted in this posture apparently was *Graham,* and the *Graham* stipulations have been adopted by consent of the parties as the record in this case as well as in *Hernandez* and in cases pending in eight other circuits (also, *Graham* itself is still on appeal before the Ninth Circuit).

This court is bound to treat as conclusive and to enforce all fairly made and voluntary stipulations of fact. *Skeets v. Johnson,* 816 F.2d 1213, 1215 (8th Cir.1987) (en banc). The tax court in *Graham,* we believe, ignored the fair impact of the government's stipulations. For example, the court observed—contrary to the stipulation that Scientology is a qualified church—that "[t]he Church of Scientology operates in a commercial manner in providing these religious services. In fact, one of its articulated goals is to make money." 83 T.C. at 578; *cf.* Rev.Rul. 78–189, 1978–1 C.B. 68, 69 (Scientology fixed donations not deductible because auditing and courses are "general education or vocational training" for which

payments are "somewhat comparable" to tuition). With the Church characterized as a commercial operation, the tax court had little trouble concluding that Scientology fixed donations "were not voluntary transfers without consideration, but were made with the expectation of receiving a commensurate benefit in return." *Graham*, 83 T.C. at 581. The stipulations, however, require that the religious nature of the Scientology activities at issue in these cases be recognized; *Graham* thus amounts to a holding that the deductibility under section 170 of payments relative to participation in bona fide religious practices will depend on the mechanism adopted by the church to solicit support from its members. Neither the tax court nor the government has cited a case in which a taxpayer has been denied a deduction for payments keyed to participation in strictly religious practices.

A taxpayer may take a deduction under section 170 for a gift or contribution to a qualified religious corporation. This does not mean, however, that any payment to a qualified church is deductible; rather, the payment must be examined to see whether it is a "gift" or "contribution" within the meaning of the statute. *Estate of Wood v. Commissioner*, 39 T.C. 1, 6 (1962). A payment generally cannot constitute a deductible charitable contribution if the taxpayer expected a substantial benefit in return. *United States v. American Bar Endowment*, 477 U.S. 105, 106 S.Ct. 2426, 2433, 91 L.Ed.2d 89 (1986); *see also id.* at 2434 ("The *sine qua non* of a charitable contribution is a transfer of money or property without adequate consideration."). Thus, taxpayers have been denied deductions for their monetary support of church-run schools when the payments assumed the nature of tuition for the taxpayers' children. *E.g., Oppewal v. Commissioner*, 468 F.2d 1000 (1st Cir.1972); *Winters v. Commissioner*, 468 F.2d 778 (2d Cir.1972); *DeJong v. Commissioner*, 309 F.2d 373 (9th Cir.1962).

The Staples urge, however, that no recognizable return benefit is received when the taxpayer through the payments was seeking strictly spiritual gain. For example, the Internal Revenue Service has ruled that deductions should be allowed for pew rents and periodic church dues and building fund assessments, Rev.Rul. 70–47, 1970–1 C.B. 49; and the cases and legislative history in discussing payments which are not deductible generally have referred to a material, financial, or economic benefit being received in return. *E.g., Winters v. Commissioner*, 468 F.2d 778, 780, 781 (2d Cir. 1972); *Murphy v. Commissioner*, 54 T.C. 249, 253 (1970); H.R.Rep. No. 1337, 83d Cong., 2d Sess., *reprinted in* 1954 U.S. Code Cong. & Admin.News 4017, 4180; Rev.Rul. 76–232, 1976–1 C.B. 62, 62. As the Staples interpret section 170, a payment to a qualified church would still be a contribution even though the church, rather than passing a collection plate or seeking periodic pledges from its members, required the payment as a condition of participation in its essential religious activities, worship, or ceremonies.

A construction of section 170 sensitive to religious practices would be consistent with the policies underlying the statutory provision. *Cf. Helvering v. Bliss*, 293 U.S. 144, 151, 55 S.Ct. 17, 20, 79 L.Ed. 246 (1934) (charitable contributions deduction not to be narrowly construed). "[I]n the case of a contribution to a charitable organization, the law's policy finds charity in the purposes and works of the qualifying organization, not in the subjective intent of the contributor." *Crosby Valve & Gage Co. v. Commissioner*, 380 F.2d 146, 147 (1st Cir.), *cert. denied*, 389 U.S. 976, 88 S.Ct. 477, 19 L.Ed.2d 468 (1967). Religious observances of any faith are considered under the law of charity to be of spiritual benefit to the general public as well as to the members of the faith, with the private benefit to individual participants being merely incidental to the broader good that is served. Rev. Rul. 71–580, 1971–2 C.B. 235, 236. The public benefit from religion remains and predominates regardless of whether church doctrines provide for traditional congregational worship or individual worship as in Scientology or whether donations are voluntary or fixed. *See Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874,

87 L.Ed. 1292 (1943) ("[T]he mere fact that the religious literature is 'sold' by itinerant preachers rather than 'donated' does not transform evangelism into a commercial enterprise.").

Congress was addressing two principal concerns when it limited section 170 charitable deductions to "contributions." First, Congress feared charitable organizations offering products and services in competition with those offered by business would gain unfair competitive advantage; and second, Congress recognized that when a contributor would receive a material quid pro quo, the amount of the donation available for the support of the charitable organization would be reduced by the cost of providing the tangible benefit. *See Haak v. United States*, 451 F.Supp. 1087, 1091 (W.D.Mich.1978). Neither of these concerns is implicated when a contributor seeks only to participate in religious practice, regardless of whether payments are voluntary or mandatory, of a set amount or discretionary, or made before-the-fact or after. *Cf. Oppewal v. Commissioner*, 468 F.2d 1000, 1002 (1st Cir.1972) ("Classification of a payment as a gift * * * should depend upon something more fundamental than the particular bookkeeping methods used by the [charitable] institution.").

Finally, as the Staples suggest in their brief, "our tax system does not treat religious services as commodities that are purchased in commercial transactions." Form sometimes is important in identifying a section 170 contribution because a payment appearing to be a purchase of an item of value creates a presumption that the transaction was not a donation. Rev.Rul. 67–246, 1967–2 C.B. 104, 105. Regardless of form, however, no similar presumption can arise when the item "purchased" was the right to participate in religious practice. Spiritual gain to an individual church member cannot be valued by any measure known in the secular realm. As the tax court has stated, privileges arising from church membership "are not significant return benefits that have a monetary value within the meaning of section 170." *Murphy v. Commissioner*, 54 T.C. 249, 253 (1970). The establishment by a church of a set "price" for religious participation does not change the nature of the benefit of religion to the individual or to society. If the Scientologist "prices" were deemed to make participation in their religious services a material, financial, or economic benefit such that the Staples' payments were not contributions, then "the passing of the collection plate in church would make the church service a commercial project." *See Murdock v. Pennsylvania*, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943).

In sum, we conclude that regardless of the timing of the payment or details of the church's method of soliciting contributions from its members, an amount remitted to a qualified church with no return other than participation in strictly spiritual and doctrinal religious practices is a contribution within the meaning of section 170.

This conclusion we believe embodies our difference with the First Circuit, which in *Hernandez* accepts participation in strictly spiritual and doctrinal religious practices as "adequate consideration" to take a payment out of the category of "contributions." *See American. Bar*, 106 S.Ct. at 2434. We are hesitant to accept this position both because of the inherently charitable nature of strictly religious practices and because of the incongruity of attempting to place a market value on religious participation. While society has recognized methods of assigning economic value to intangible return benefits such as adoption services and concert admissions, *see Hernandez*, at 1217, it has not to this point extended this recognition to any system for expressing spiritual gain in monetary form. Cases involving church-run schools use the cost of providing services to value the return benefit to taxpayers, *see id.*, at 1217; but the benefit—education—is only religiously oriented. No case to which we have been cited values in that manner the strictly religious practices presented by the stipulations in this case.

Furthermore, these stipulations foreclose any reliance on the Church of Scientology's fixed donations as representing the value of its essential religious practices. Under

the stipulations the fixed donations are not market prices set to reap the profits of a commercial moneymaking venture; rather, the Church of Scientology is a bona fide church which selected fixed donations as its mechanism for raising funds from its members.

Given our conclusion that participation in strictly religious practices is not a recognizable return benefit under section 170, the analysis in *American Bar* by its very nature is inapplicable to the situation before us. In *American Bar* the taxpayer received an indisputably tangible benefit with a measurable secular market value, namely insurance, in return for his payments to a tax-exempt charitable organization. The Court analyzed the case as one involving "dual payments"—that is, payments having the character both of contributions and of payments for valuable benefits received—and applied the rule that a taxpayer may deduct the portion of a dual payment which exceeds the market value of the tangible benefit. 106 S.Ct. at 2433–34 (citing Rev.Rul. 68–432, 1968–2 C.B. 104, 105). The specific question addressed by the Court was the value of the insurance to the taxpayer, *id.* at 2434, and the Court considered the taxpayer's intent to make a contribution as an element in determining whether the payment was in excess of the value received, *see* Rev.Rul. 67–246, 1967–2 C.B. 104, *cited in American Bar*, 106 S.Ct. at 2434. A dual payment valuation question cannot arise unless the taxpayer has received a recognizable tangible benefit, and that benefit must be capable of segregation, through valuation, from the intangible charitable benefit to the taxpayer. The Staples having received no recognizable benefit, we have no dual payments in this case.

Because we hold that the Staples' payments to the Church of Scientology for participation in strictly religious practices were contributions within the meaning of section 170, we need not reach the constitutional arguments raised by the Staples. The order of the tax court is reversed.