**Thomas Lee and Betty Lorraine CHRISTIANSEN, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 86–1453.

United States Court of Appeals, Tenth Circuit.

April 1, 1988.

---

Michael J. Graetz (Eric M. Lieberman and Nicholas E. Posner, of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, on the briefs), for appellants.

David M. Moore, Atty. Tax Div., Dept. of Justice (Michael L. Paup and Robert S. Pomerance, Attys. Tax Div., Dept. of Justice, and Roger M. Olsen, Asst. Atty. Gen., with him on the brief), for appellee.

Lee Boothby, Washington, D.C. for Americans United for Separation of Church and State, amicus curiae.

Before SEYMOUR, McWILLIAMS and TACHA, Circuit Judges.

TACHA, Circuit Judge.

Thomas and Betty Christiansen appeal a final order of the United States Tax Court finding deficiencies in their income taxes for the taxable years 1975, 1976, and 1977 in the amounts of $171.04, $913.57, and $306.00, respectively.

This case is one of a number of virtually identical cases. The Christiansens, who reside within the Tenth Circuit, and taxpayers who reside in other circuits, claimed deductions under section 170[1] for charitable contributions to the Church of Scientology (Church). The Internal Revenue Service (IRS) denied these deductions, Rev. Rul. 78-189, 1978-1 C.B. 68, because the taxpayers had not established that the payments exceeded the value of benefits and privileges received in return. The Christiansens and other taxpayers challenged the IRS position. They stipulated, along with the IRS, that they would be bound by a United States Tax Court test case, although they reserved their right to appeal the decision. The tax court decided adversely to the Ninth Circuit taxpayers in *Graham v. Commissioner*, 83 T.C. 575 (1984), *aff'd*, 822 F.2d 844 (9th Cir.1987). The Christiansens now appeal to this court. Appeals based on an identical record are now pending or have been decided in every

circuit except the Federal Circuit, *Miller v. I.R.S.*, 829 F.2d 500 (4th Cir.1987); *Graham v. I.R.S.*, 822 F.2d 844 (9th Cir.1987); *Staples v. Commissioner*, 821 F.2d 1324 (8th Cir.1987), *petition for cert. filed*, Feb. 19, 1988; *Hernandez v. Commissioner*, 819 F.2d 1212 (1st Cir.1987), *petition for cert. filed*, Dec. 11, 1987.

The payments for which the Christiansens claim deductions are payments made to the Church for auditing and training services. Auditing and training are the two central religious services of Scientology. In the tax court test case, the parties stipulated that: (1) Scientology is a religion, (2) Scientology organizations are churches within the meaning of section 170(b)(1)(A)(i), and (3) Scientology is a tax-exempt organization under section 501(c)(3).[2] The IRS also conceded that auditing is a form of religious observance. Thus, the issue before the tax court was whether the taxpayers' payments for auditing and training services are charitable contributions or gifts within the meaning of section 170.

The tax court noted that a charitable contribution has been defined as a voluntary transfer of property without consideration. *Graham*, 83 T.C. 575, 580 (1984) (quoting *DeJong v. Commissioner*, 36 T.C. 896, 899 (1961), *aff'd*, 309 F.2d 373 (9th Cir.1962). The court also noted that if a payor makes a payment in anticipation of receiving a benefit, the payment is not a gift. *Id.*

In assessing whether the payments at issue qualify as charitable contributions, the tax court examined the structure of the taxpayers' payments to the Church for auditing and training sessions. The court found that the Church provided auditing and training services only if they were purchased, and gave discounts for advance payment and refunds if a person decided not to receive the services. *Id.* The court

---

1. All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question.

2. The parties also stipulated to the entire record in a related case, *Church of Scientology of California v. Commissioner*, 83 T.C. 381 (1984), *aff'd*, 823 F.2d 1310 (9th Cir.1987), *petition for cert. filed*, Feb. 16, 1988.

concluded that the payments were not "voluntary transfers without consideration, but were made with the expectation of receiving a commensurate benefit in return," *id.* at 581, and therefore, the claimed deductions were not allowed. The tax court also rejected taxpayers' constitutional challenges to denial of the deductions. *Id.* at 581–83.

On appeal, we review the legal standards applied by the tax court and its factual conclusions based on those standards. We find no error and thus are in agreement with the decisions of the First, Fourth, and Ninth Circuits affirming the tax court's denial of the deductions. *Miller,* 829 F.2d at 501; *Graham,* 822 F.2d at 846; *Hernandez,* 819 F.2d at 1227. These decisions are thorough and well-reasoned, and we find them persuasive.

■ We turn first to the appropriate legal standard. The United States Supreme Court held that "[t]he *sine qua non* of a charitable contribution is a transfer of money or property without adequate consideration." *United States v. American Bar Endowment,* 477 U.S. 105, 106 S.Ct. 2426, 2434, 91 L.Ed.2d 89 (1986). If a taxpayer expects a substantial benefit in return for his payment, then the payment is not deductible. *Id.* at 2433. In *Graham,* the court stated that the rule in the Ninth Circuit further provides that "a charitable gift or contribution must be a payment made for detached and disinterested motives. This formulation is designed to ensure that the payor's primary purpose is to assist the charity and not to secure some benefit personal to the payor." *Graham,* 822 F.2d at 848. This rule, which comports with the Supreme Court's opinion in *American Bar Endowment,* applies in the Tenth Circuit as well. *Dowell v. United States,* 553 F.2d 1233, 1238 (10th Cir.1977). Thus, in deciding whether a payment is a charitable gift or contribution, we examine the payor's intent.

To determine the payor's intent, we look to the circumstances of the transaction. *Commissioner v. Duberstein,* 363 U.S. 278, 287–89, 80 S.Ct. 1190, 1197–98, 4 L.Ed. 2d 1218 (1960); *Miller,* 829 F.2d at 503;

*Graham,* 822 F.2d at 848–49; *Dowell,* 553 F.2d at 1238–39. "This focus on the external features of the transaction serves as an expedient for any more intensive inquiry into the motives of the payor." *Graham,* 822 F.2d at 848.

■ Taxpayers contend that the above rule does not apply in this case because they received a religious rather than an economic benefit. However, section 170 authorizes deduction of *contributions* only. The relevant question is whether the taxpayer expected a benefit in return for the payment; deductibility does not depend on what type of benefit the taxpayer received. A benefit does not have to be economic to bar the deduction. *Miller,* 829 F.2d at 503–04; *Graham,* 822 F.2d at 849; *Hernandez,* 819 F.2d at 1217. *But see, Staples,* 821 F.2d at 1326–27.

> The test is not the economic character of what the payor receives but whether there is a specific, measurable quid pro quo for the donation in question. Though the economic aspect of a reward makes it easier to identify such a transaction, it is not a precondition to application of the test.

*Graham,* 822 F.2d at 849. Section 170 does not authorize churches to offer a deductible quid pro quo while other charitable organizations may not. *Id.*

We turn now to consideration of how the legal standard applies to the facts of this case. We agree with the First Circuit that application of the *American Bar Endowment* standard could create practical and constitutional difficulties in some cases. *Hernandez,* 819 F.2d at 1218. The court in *Hernandez* offered the following example:

> [Suppose] the government monitored church records in an attempt to place a monetary value on the benefit of all church services, group programs, and pastoral counselling generally available to contributing members. Such a case would present not only the problem of determining value but also the problem of excessive entanglement in the affairs [of] a religious institution.

*Id.* The court found, however, that these problems were not present in the case be-

fore it. *Id.* Likewise, we find no practical or constitutional difficulties in applying the appropriate legal standard to the facts of the case before us.

■ The Church requires payment of a fixed donation for auditing and training services; the Church sets the amount of these donations. It offers discounts if payments are made well in advance of services, and provides refunds for services not received. Taxpayers do not contest that their payments were for auditing and training services. They also do not claim that their donations exceeded the value of the services. Thus, examination of the structure of these payments clearly reveals that they were made on a quid pro quo basis for services. Furthermore, there is no problem in determining the value of the services since the value has been set by the Church and is not contested by the taxpayers.

Taxpayers also allege that the tax court's construction of section 170 violates the religion clauses of the first amendment and that selective enforcement by the IRS violates the first and fifth amendments. We agree with the analysis of the First and Ninth Circuits as to these issues, *Hernandez,* 819 F.2d at 1218–27; *Graham,* 822 F.2d at 850–53, and find no constitutional violation. *See also Miller,* 829 F.2d at 505–06.

AFFIRMED.

SEYMOUR, Circuit Judge, dissenting.

I respectfully dissent. I am in full agreement with the analysis of the Eighth Circuit in *Staples v. Commissioner,* 821 F.2d 1324 (8th Cir.1987), and its conclusion that payments made by members of the Church of Scientology for individualized religious practices are tax deductible contributions. The court in *Staples* pointed out that

> " 'our tax system does not treat religious services as commodities that are purchased in commercial transactions.' Form sometimes is important in identifying a section 170 contribution because a payment appearing to be a purchase of an item of value creates a presumption that the transaction was not a donation. Rev.Rul. 67–246, 1967–2 C.B. 104, 105.

Regardless of form, however, no similar presumption can arise when the item 'purchased' was the right to participate in religious practice. Spiritual gain to an individual church member cannot be valued by any measure known in the secular realm. As the tax court has stated, privileges arising from church membership 'are not significant return benefits that have a monetary value within the meaning of section 170.' *Murphy v. Commissioner,* 54 T.C. 249, 253 (1970). The establishment by a church of a set 'price' for religious participation does not change the nature of the benefit of religion to the individual or to society. If the Scientologist 'prices' were deemed to make participation in their religious services a material, financial, or economic benefit such that the Staples' payments were not contributions, then 'the passing of the collection plate in church would make the church service a commercial project.' *See Murdock v. Pennsylvania,* 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943)."

In my view, any other conclusion has ominous implications for all religious institutions. I would reverse.