**Michael F. and Nancy S. FOLEY, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 428, Docket 86–4026.**

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1986.

Decided April 19, 1988.

Eric M. Lieberman, New York City (Nicholas E. Poser, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, of counsel) for petitioners-appellants.

David M. Moore, Atty. Tax Div., U.S. Dept. of Justice, Washington, D.C. (Roger M. Olsen, Asst. U.S. Atty. Gen., Michael L. Paup, Robert S. Pomerance, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., of counsel) for respondent-appellee.

Lee Boothby, Berrier Springs, Mich., filed a brief for amicus curiae Americans United for Separation of Church and State.

· Before NEWMAN, WINTER and MINER, Circuit Judges.*

MINER, Circuit Judge:

## I.

This is an appeal from a decision of the United States Tax Court (Sterrett, C.J.) disallowing an income tax deduction of $5,881.83 paid by appellants to the Church of Scientology, Mission of Burbank, now the Mission of Los Angeles, California; in 1976 and assessing a deficiency in the sum of $975.92. The payments were made in connection with the appellants' participation in religious practices known as "auditing" and "training" in the Church of Scientology. No trial was conducted in this case, the parties having stipulated to be bound by the findings of fact and conclusions of law made in three "test" cases then pending in the tax court. The parties also stipulated "that to the extent relevant the records in said [three test cases] shall be deemed part of the record herein for purposes of any ... appeal." App. at 12. The test cases concluded in the tax court with a decision in favor of the Commissioner, *Graham v. Commissioner*, 83 T.C. 575 (1984), and the tax court entered its decision assessing a deficiency in the case at bar accordingly. The *Graham* case was affirmed on appeal to the Ninth Circuit Court of Appeals, which held that the fixed donations required to participate in the religious practices in question do not qualify for the deduction for religious contributions authorized by § 170 of the Internal Revenue Code of 1954. *Graham v. Commissioner*, 822 F.2d 844 (9th Cir.1987). Faced with the same issues, the First Circuit Court of Appeals also held in favor of the Commissioner. *Hernandez v. Commissioner*, 819 F.2d 1212 (1st Cir.1987). The Eighth Circuit Court of Appeals, however, has held that "payments to the Church of Scientology for participation in strictly religious practices were contributions within the meaning of section 170." *Staples v. Commissioner*, 821 F.2d 1324 (8th Cir.1987). We agree with the Eighth Circuit and reverse.

## II.

The Church of Scientology is a religious organization exempt from tax under the provisions of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).[1] Those who adhere to the tenets of the Church participate in the rituals of auditing and training, the

---

* Judge Mansfield, originally a member of the panel, died on January 7, 1987. Pursuant to Local Rule § 0.14(b), Judge Winter was designated to replace Judge Mansfield.

1. The Commissioner stipulated in the three test cases, and therefore in this case, that the Church was an exempt religious organization. The stipulation came prior to the decision of the tax court in *Church of Scientology of California v. Commissioner*, 83 T.C. 381 (1984). In that case, the tax court upheld the revocation of the exemption of the Church of Scientology of California. That decision was affirmed by the Ninth Circuit Court of Appeals. 823 F.2d 1310 (9th Cir.1987).

central religious experiences of Scientology. The practice of auditing involves a one-to-one encounter between the participant and a church staff member designated as the "auditor." The purpose of these encounters is to raise the spiritual awareness of the participant to the highest level through a series of progressive steps. Scientologists believe that the enhancement of civilization is linked to the spiritual goals to which they aspire. They undertake the experience of training for the purposes of studying church doctrine and scripture and of attaining the background needed to qualify as auditors. Training is intended to enlighten participants and to enable them to help others.

A schedule of payments for auditing and training sessions has been established by the Church. These payments are referred to as "fixed donations" or "fixed contributions." Participation in the sessions generally is conditioned on such payments, which are the major sources of funding for church operations and activities. The mandatory fee schedule is based on a religious tenet of Scientology known as the Doctrine of Exchange. According to this Doctrine, every person must give something for what he or she receives in order to maintain "inflow and outflow" and avoid spiritual decline. The fees established by the Church vary with the length and level of sophistication of the sessions. Advance payments are encouraged, and refunds for unused payments are given. It appears that the bulk of the contributions made by appellants related to the auditing sessions in which they participated. Whether the appellants are entitled to deduct as charitable contributions on their federal income tax returns the sums paid over to the Church of Scientology in connection with their participation in the Church practices of training and auditing is the issue presented by this appeal.

## III.

The Internal Revenue Code provides that charitable contributions may be deducted from taxable income, 26 U.S.C. § 170(a), and defines such donations as contributions or gifts made to or for the benefit of certain specified entities, including those organized and operated exclusively for religious purposes, 26 U.S.C. § 170(c)(2)(B). "A payment of money generally cannot constitute a charitable contribution if the contributor expects a *substantial* benefit in return," *United States v. American Bar Endowment*, 477 U.S. 105, 116, 106 S.Ct. 2426, 2433, 91 L.Ed.2d 89 (1986) (emphasis supplied), since "[t]he sine qua non of a charitable contribution is a transfer of money or property without adequate consideration," 477 U.S. at 118, 106 S.Ct. at 2434.

In the context of religious contributions, we have affirmed the disallowance of deductions for parochial school tuition payments, which clearly are made with the expectation of a definite economic benefit. *Winters v. Commissioner*, 468 F.2d 778, 780 (2d Cir.1972). Donations related to participation in religious observances, however, have not been regarded as yielding specific private benefits to the donor, who is considered only an incidental beneficiary, the primary beneficiaries of the observances being the members of the faith and the general public. Rev.Rul. 71–580, 1971–2 C.B. 235. Accordingly, the Commissioner has allowed deductions for the saying of masses, Rev.Rul. 78–366, 1978–2 C.B. 241, and for pew rents, building fund assessments and periodic dues, Rev.Rul. 70–47, 1970–1 C.B. 49, all involving fixed donations for participation in religious services. Presumably, specified payments for attendance at High Holy Day services, for tithes, for torah readings and for memorial plaques would fall into the same category.

Conceding the religious character of auditing and training in the Church of Scientology, the Commissioner argues that the appellants received *quid pro quo* or "commensurate benefits" in return for the payment of the fees specified for participation in the practices of the Church. According to the Commissioner, those benefits were substantial in nature and therefore fail to qualify as charitable contributions. Referring to testimony in the stipulated record regarding improvements in the lives of those who participate in Scientology observances, the Commissioner contends that the payments made by church members are exchanged for the fulfillment of their personal expectations. He therefore con-

cludes that "[t]heir payments were not for services or programs designed for collective participation by the church membership as a whole," since "they purchased, by the hour, tailormade benefits for their private use." Appellee's Brief at 22–23. In advancing his "value received" theory, the Commissioner contends that "value" need not be of an economic or financial type.

The individual benefits gained by appellants through participation in their religious rituals, and the payment of fixed fees for that participation, cannot be considered so equivalent as to pass the donation/purchase line. Appellants were fully aware that the principal support of their church was derived from the payments received for auditing and training. As in the case of the deductible donation described previously, it must be presumed that the primary purpose of the donations was a charitable expectation that the religious causes of the Church would be furthered, *Murphy v. Commissioner*, 54 T.C. 249 (1970), and that only incidental benefits accrued to the individual donors. In any event, there is no way of measuring spiritual or religious benefits in such a way as to conclude that they are "commensurate" with the fees paid for participation in the religious activities giving rise to those benefits. The better rule is to avoid any attempted measurement and to hold "that regardless of the timing of the payments or details of the church's method of soliciting contributions from its members, an amount remitted to a qualified church with no return other than participation in strictly spiritual and doctrinal religious practices is a contribution within the meaning of section 170." *Staples*, 821 F.2d at 1327.

Finally, auditing and training are *the* religious practices of the Church of Scientology. Appellants are entitled to participate in those practices by making donations in accordance with a prescribed schedule. Their donations did not yield them any substantial economic benefit, because they received in return nothing of material value to themselves or to anyone else. Contrary to the Commissioner's argument, Appellee's Brief at 19–20, economic value can be identified where payments are made to an adoption agency to secure an adopted child, *Arceneaux v. Commissioner*, 36 T.C.M. 1461 (1977), to a charitable organization for admission to a concert, Rev.Rul. 67–246, 1967–2 C.B. 104, and to a museum for membership, Rev.Rul. 68–432, 1968–2 C.B. 104. Payments for religious services stand on a different footing. They constitute the transfer of money without adequate consideration in the economic sense because of the nature of what is received, and the *quo* of religious experience can never be considered the equivalent of the *quid* of a money payment.

### IV.

Because we hold that the donations made by appellants for participation in the religious practices of their church were charitable contributions within the meaning of the Internal Revenue Code, and therefore deductible on their federal income tax returns, it is unnecessary for us to reach the merits of the constitutional arguments they have advanced. The decision of the tax court is reversed.

JON O. NEWMAN, Circuit Judge, dissenting:

The Church of Scientology offers "auditing" sessions at prices ranging from $50 to $100 an hour depending on the level of "intensity." The Church's price list states that quantity discounts are available; the $50 per hour price for the 12½ hour package drops to $42.50 per hour for the 100 hour package. Payments must be made in advance. A 5% discount is available for purchases prepaid substantially in advance. Partial refunds are available for sessions purchased but unused. The Church's advertising literature states that a participant in these auditing sessions can improve his health, memory, and communication skills. The Tax Court concluded that payments for the purchase of these auditing sessions were not charitable contributions under section 170 of the Internal Revenue Code. That conclusion has been upheld by the courts of appeals for four circuits. *Lee v. Commissioner*, 56 U.S.L.W. 2572 (10th Cir. Apr. 1, 1988) (No. 86–1453); *Miller v. I.R.S.*, 829 F.2d 500 (4th Cir.1987); *Graham v. Commissioner*, 822 F.2d 844 (9th Cir.1987) (Kennedy, J.); *Hernandez v.*

*Commissioner,* 819 F.2d 1212 (1st Cir. 1987), *cert. granted,* — U.S. —, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988); *contra Staples v. Commissioner,* 821 F.2d 1324 (8th Cir.1987), *petition for cert. filed,* 56 U.S.L.W. 3592 (U.S. Feb. 19, 1988) (No. 87–1382). Because I agree with the views of the First, Fourth, Ninth and Tenth Circuits, I respectfully dissent.

The claim of deductibility raised by this appeal and similar appeals brought in each of the nation's circuits may not recur now that the Ninth Circuit has also upheld the Tax Court's revocation of the tax exemption of the Church of Scientology. *Church of Scientology of California v. Commissioner,* 823 F.2d 1310 (9th Cir.1987), *affirming* 83 T.C. 381 (1984), *petition for cert. filed,* 56 U.S.L.W. 3592 (U.S. Feb. 16, 1988) (No. 87–1377). And the issues raised by the claim have been thoroughly discussed by the courts of appeals that have already considered the matter. Nevertheless a few words are appropriate to point out the basis of my disagreement with the panel opinion of this Court.

The majority appears to set forth two basic rationales for its reversal of the Tax Court's decision. First, the majority says that "it must be presumed that the primary purpose of the donations was a charitable expectation that the religious causes of the Church would be furthered, *Murphy v. Commissioner,* 54 T.C. 249 (1970), and that only incidental benefits accrued to the individual donors." 844 F.2d at 97. On the contrary, it is the notice of tax deficiency that carries a presumption of correctness and requires the taxpayer to demonstrate otherwise. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Schaffer v. Commissioner,* 779 F.2d 849, 857 (2d Cir.1985). Moreover, in this case the Tax Court found, upon a record filled with the promotional literature of the Church of Scientology, that participants in the Church's auditing sessions received far more than incidental benefits, and those findings are not clearly erroneous. There is no basis for according the taxpayer a favorable presumption.

Second, and more fundamentally, the majority concludes that any payment made to a church for participating in *religious* prac-

tices of the church is entitled to be treated as a charitable deduction. That is a policy choice that perhaps could be made by Congress, subject to the limitations of the Establishment Clause, but it is a choice that Congress has thus far declined to make. Rather than make all payments for participating in religious practices automatically deductible, Congress has specified that a payment to an organization operated exclusively for religious and other eleemosynary purposes is deductible only if such a payment is a "contribution or gift." 26 U.S.C. § 170(c) (1982). No special preference is given to payments made for participating in religious practices.

Moreover, it is far from clear that Congress would want to legislate the blanket deductibility for religious practice payments that the majority has announced in this case. It may well be in conformity with the religious teachings of a church that its members educate their children in church-run schools and a church might well deem such attendance a religious practice, but payments for parochial school tuition are nonetheless not considered charitable contributions. *Winters v. Commissioner,* 468 F.2d 778 (2d Cir.1972). Allowing deductibility of all payments made for a purpose that a church deems to be a religious practice would greatly expand the scope of the charitable contribution category beyond what Congress has provided.

In some cases it may be a close question whether a payment to a religious institution is a purchase of services primarily for the benefit of the payor and hence not deductible or a contribution to the institution with only incidental benefit to the payor and hence deductible. Payments for pew rentals and attendance at High Holy Day services are close to the line, and, as the Ninth Circuit has observed, not all of the Commissioner's prior rulings in this area may be defensible. *See Graham v. Commissioner, supra,* 822 F.2d at 850. The inquiry in each case is whether the payment "is intended to benefit the charity without reference to a reciprocal and specific benefit to the donor, whether or not the benefit is religious." *Id.* at 849. In this case, that issue is not even close. Auditing sessions are advertised, priced, and

marketed by the seller and bought by the customer as specific benefits for the purchaser, and the Tax Court could hardly have found otherwise.

Appellants' constitutional contentions, not reached by the majority, are not persuasive in my view, for reasons fully set forth in *Graham, Miller,* and *Hernandez.*

For these reasons, I dissent.