ARCHIBALD W. McMILLAN AND ETHELYN M. McMILLAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69808. Filed March 16, 1959.

*Archibald W. McMillan, pro se.*
*James C. Bright, Esq.*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined a deficiency in income tax for the year 1955 in the amount of $132.

The issues for decision are (1) whether an infant taken into petitioners' home on February 11, 1955, preliminary to adoption, which eventuated in February 1956, could properly be claimed as a dependent in 1955; (2) if not, whether the amount expended for support of the infant in 1955 can be deducted as a charitable contribution; and (3) whether a $75 payment in 1955 to the Family and Children's Service Association as a so-called adoption service charge is properly deductible as a charitable deduction.

### FINDINGS OF FACT.

The petitioners are husband and wife residing in Dayton, Ohio. They filed a joint income tax return for 1955 with the district director of internal revenue at Cincinnati, Ohio.

The petitioners by final decree of adoption issued by the Probate Court of Montgomery County, Ohio, on February 8, 1956, legally adopted the child, Carol Ethelyn McMillan.

Carol was not related to the petitioners by blood or by marriage in 1955. She was placed in the home of the petitioners at their instance by the Family and Children's Service Association on February 11, 1955, and has continuously resided in said home since that date.

The petitioners and the Association agreed that an adoption service charge of $150 was to be paid by the petitioners to the Association in two installments of $75, the first to be paid at the time the child was placed in the petitioners' home, and the second payment to be made at the time of the entry of the final decree in the adoption proceedings.

The petitioners were not required by court order to pay any sum to the Association as an agency fee, adoption fee, or adoption service fee, but on March 1, 1955, the petitioners made a payment of $75 to said Association pursuant to the foregoing understanding with the Association that an adoption service charge in such amount would be paid by them.

The payment of $75 made by the petitioners to the Association on March 1, 1955, was placed by the Association in its general operating fund and was used by it for the general purposes of the Association.

The Association had not made and did not at that time or thereafter make any administrative arrangement in its personnel structure, accounting system, or otherwise which had the effect in any way of applying the payment of $75 for the specific care of Carol or for the performance of any specific service to or for the sole benefit of Carol or the petitioners.

The general funds of the Association are derived primarily from the Community Chest Association of Montgomery County, from endowment incomes, and from fees for services.

From the date of the surrender of Carol to the Association in 1954, until the placement of Carol in the home of the petitioners on February 11, 1955, she was cared for in a boardinghome selected by the Association, and the amount of $50 a month was paid by the Association to the operator of the boardinghome in consideration of such care.

The Association does not regard the adoption fee payments as a charitable contribution, but instead views them as a fee for service to cover part of the cost of operating an adoption program.

During the period from February 11, 1955, through December 31, 1955, the petitioners furnished Carol's sole support in the approximate value and cost to the petitioners of $520.

### ULTIMATE FINDINGS.

During the taxable year 1955 Carol was not the dependent of the petitioners within the meaning of section 152 of the Internal Revenue Code of 1954.

The cost of the support furnished Carol Ethelyn McMillan by the petitioners in the year 1955 and the $75 adoption fee paid to the Family and Children's Service Association in the year 1955 are not deductible by the petitioners.

### OPINION.

On their income tax return for 1955, the petitioners claimed Carol as a dependent. The Commissioner denied the claim as not provided for under section 152(a)(9), I.R.C. 1954. The Commissioner also determined that the payment of the agency fee and the expenditures for the support of Carol during the probationary period in 1955 in connection with her eventual adoption were not deductible as charitable contributions under section 170, I.R.C. 1954. He determined that the expenditures were personal expenses of the petitioners and so nondeductible under section 262, I.R.C. 1954.

Carol was not related in the taxable year to the petitioners by blood or marriage. Therefore, as we see it, petitioners could not claim her as a dependent unless she came within the purview of section 152 (a)(9). That section defines a dependent to be "[a]n individual who, *for the taxable year of the taxpayer*, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household." (Emphasis supplied.)

As in *Robert Woodrow Trowbridge*, 30 T.C. 879, on appeal (C.A. 9) the issue comes down to the meaning of the phrase "for the taxable year of the taxpayer." Carol did not have her abode in petitioners' home during the entire year 1955. For some time before February 11, 1955, Carol had her place of abode elsewhere and had no relationship

of any kind to petitioners. This lack of relationship, except for the fact of her having been brought into petitioners' home in February of 1955 where she continued to live throughout the remainder of that year, continued until her adoption on February 8, 1956. The Commissioner's Income Tax Regulations, section 1.152–1(b), state, in part:

Section 152(a)(9) applies to any individual * * * who lives with the taxpayer and is a member of the taxpayer's household during the *entire taxable year* of the taxpayer. * * * The taxpayer and dependent will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. * * * [Emphasis supplied.]

There were here no "special circumstances" calling for "temporary absences from the household." As a matter of fact, Carol did not become a member of the petitioners' household until February 11, 1955, and the interim from January 1, 1955, until that date, in our opinion, cannot qualify as a temporary absence from a household of which she had never been a member before that time.

As pointed out in the *Trowbridge* case, *supra*, the reports of both the Ways and Means Committee of the House and the Finance Committee of the Senate support the interpretation placed on section 152 (a)(9) by the regulations. In the reports it was stated: "Paragraph 9 is intended to apply only when the taxpayer and such other members of his household live together in such household during the *entire taxable year* (except for temporary absences due to special circumstances)." (Emphasis supplied.) H. Rept. No. 1337, 83d Cong., 2d Sess. (1954), p. A41; S. Rept. No. 1622, 83d Cong., 2d Sess. (1954), p. 193.

Accordingly, the Commissioner is sustained on the dependency issue. *Robert Woodrow Trowbridge, supra.*

If they fail on the dependency issue, the petitioners nevertheless claim the amount they expended for Carol's support in 1955 as a charitable deduction. Their argument is that inasmuch as the Family and Children's Service Association, a recognized charitable organization, was obligated legally to support Carol until her final adoption, their expenditures for her support were in fact for the benefit of the Association and, so, constitute charitable contributions to the Association.

Though their motive in bringing Carol into their home, eventual adoption, was of the highest nature and may have had charitable incidents, we do not think the petitioners can properly claim a charitable deduction for her support. They were the seekers here; it was their purpose to adopt her and they initiated the proceedings to that end. None of the claimed expenditures were paid directly to the Association, or even indirectly. The petitioners so far as the record shows,

wanted to adopt the child and voluntarily undertook to have her placed in their home for a probationary period. It was understood that so long as she was there, the petitioners would support her. True, the Association during this period was thus relieved of an obligation which it would otherwise have been forced to meet. But we think the support provided for Carol by the petitioners during "probation" was essentially to further their primary object of adopting the child. To us this is a personal objective or purpose and whatever charitable motives might have been present lose all color when viewed in the light of the inherently personal aspects of the situation. We do not think petitioners, in undertaking Carol's support, really had any intention of thereby contributing to the Association. We hold these expenses were personal in nature and not a charitable contribution.

Further, the petitioners claim that the $75 of the $150 which they paid in 1955 as a so-called "agency fee," "adoption fee," or "adoption service fee" was a charitable contribution and so deductible. We do not agree. So far as the record shows, this payment was required by the Association as a prerequisite to placing Carol in the petitioners' home preliminary to adoption. The payment was not regarded by the Association as a contribution but, instead, was a "fee for service to cover part of the cost of operating an adoption program." We think this is a proper characterization of the payment. Again, as in the case of the support expenditures, this was a payment in furtherance of the petitioners' purpose of adopting Carol. Though in their argument on brief, petitioners slant this purpose or desire as a "social" or "charitable" rather than a "personal" purpose, pointing out that "it has been estimated that it costs $10,000 to raise and educate a child in present day city life" and that, having in mind the professional standing of the petitioners, "a conservative figure of $30,000 may be reached as the cost to petitioners of adopting the child in question," we nevertheless are of the opinion that the $75 payment was a personal expense rather than a charitable contribution. We cannot believe that the petitioners' actions with respect to their relationship with Carol, proposed or effected, and the expenses they thus incurred, were anything but of the most personal or family nature. Whatever charitable aspects there may have been lose significance when compared to what we conceive must have been petitioners' true motive—the worthy desire to create a family relationship with Carol through recognized procedures. We hold that expenses incurred in effectuating this motive are personal and nondeductible.

*Decision will be entered for the respondent.*