GEORGE WILLIAM OCHS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ochs v. Commissioner
Docket No. 9876-82.
United States Tax Court
T.C. Memo 1986-595; 1986 Tax Ct. Memo LEXIS 15; 52 T.C.M. (CCH) 1218; T.C.M. (RIA) 86595; December 22, 1986. George William Ochs, pro se. Cheryl J. Choy-Weller, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: In his notice of deficiency respondent determined deficiencies in and additions to income tax as follows: Additions to Tax,
I.R.C. 1954
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1970
$524.00
$262.00
1971
739.00
369.50
1972
1,586.90
793.45
1973
1,308.75
976.88
1974
10,535.00
9,060.82
$577.07
*17 We must decide the following issues: (1) Was petitioner entitled to claim a dependency exemption for a wife and to file joint returns using "married filing jointly" rates in 1970 through 1973? (2) Was he entitled to claim dependency exemptions for three children in 1970 and 1971 and for four children in 1972 and 1973? (3) Did he fail to report interest and other income in 1973 and 1974? (4) Is he liable under section 6653(b) for the fraud additions in 1971, 1972, 1973, and 1974? [2]
(5) Is he liable under section 6654 for failure to pay estimated tax? FINDINGS OF FACT Petitioner resided at the Otisville Federal Correctional Institution, Otisville, N.Y., when the petition in this case was filed. Petitioner timely filed income tax returns showing joint filing status for tax years 1970 through 1973. They are purportedly signed by petitioner and a "Marilyn Ochs." Petitioner's 1974 return was filed October 13, 1976. It shows single filing status, and is signed only by *18 petitioner. For 1970 and 1971 petitioner claimed dependency exemptions for a wife and three children, George, William, and Alexander. For 1972 and 1973 petitioner claimed exemptions for these plus an additional child, Marilyn. Petitioner did not report any interest income for 1973. He reported $560 in interest income for 1974. Petitioner was the subject of a seven count indictment filed in October 1977 in the District Court for the Southern District of New York. Count One charged him with the use of extortionate means to collect a loan he had made to Debbie McElroy, in violation of 18 U.S.C. sec. 894 (1982). Count Two charged that he had obstructed justice by endeavoring to influence witnesses subpoenaed to testify before a grand jury, in violation of 18 U.S.C. sec. 1503 (1982). Counts Three through Five charged that he had falsely subscribed income tax returns for 1971, 1972, and 1973, in violation of 26 U.S.C. sec. 7206(1) (1982) by claiming personal exemptions to which he knew he was not entitled. Count Six charged him with failure to file his 1974 income tax return, in violation of 26 U.S.C. sec. 7203 *19 (1982), and Count Seven charged him with evading his 1974 Federal income taxes, in violation of 26 U.S.C. sec. 7201 (1982). The Government's proof at a trial before a jury sufficiently demonstrated that during the years 1974 through 1976 petitioner owned and operated a New York City massage parlor and conducted a loansharking business and that in the course of his loansharking activities petitioner threatened to murder Debbie Frank McElroy, a prostitute whom he employed at his Studio One massage parlor, for failure to make interest payments on a usurious loan. The evidence further revealed several violations of the Federal income tax laws. The jury found that on his 1971, 1972, and 1973 tax returns petitioner claimed false exemptions for a nonexistent wife and several children, and in 1974 petitioner received $25,000 in income from his prostitution and loansharking businesses which he did not report. Finally, while petitioner was being investigated by a Federal grand jury sitting in the Southern District of New York, he approached witnesses who were subpoenaed to appear before the grand jury and instructed them to lie when questioned about payments of interest *20 made on loans. Petitioner instructed the witnesses in the alternative to refuse to testify before the grand jury by asserting their Fifth Amendment privilege. See United States v. Ochs,595 F.2d 1247, 1250-1251 (2d Cir. 1979). The jury found petitioner guilty on all counts. Judge Cooper sentenced him to consecutive terms of imprisonment of seven years on Count One, five years on Count Two, three years on each of Counts Three, Four, and Five, and two years on Count Seven, for a total of 23 years. The judge suspended the imposition of sentence on Count Six which he regarded as a lesser included offense encompassed by Count Seven. Petitioner's conviction and sentence were affirmed, United States v. Ochs,595 F.2d 1247 (2d Cir. 1979), affg. 461 F. Supp. 1 (S.D.N.Y. 1978), cert. denied 444 U.S. 955 (1979), as was the denial of his subsequent motion to reduce his sentence, United States v. Ochs,490 F. Supp. 1206 (S.D.N.Y. 1980), affd. in unpublished opinion 636 F.2d 1205 (2d Cir. 1980), cert. denied 451 U.S. 1016 (1981). Petitioner then sought a new trial on the basis of "newly *21 discovered" evidence and prosecutorial misconduct, substantially the same arguments advanced before this Court. The District Court denied petitioner's application. United States v. Ochs,548 F. Supp. 502 (S.D.N.Y. 1982), affd. in unpublished opinion 742 F.2d 1444 (2d Cir. 1983), cert. denied 464 U.S. 1073 (1984). The deficiencies determined by respondent for 1970, 1971, and 1972 were based on his disallowance of petitioner's joint filing status and the dependency exemptions claimed. For 1973 respondent disallowed joint status, the dependency exemptions claimed, and charged petitioner with receiving additional interest income of $1,573. The deficiency for 1974 is based on additional interest income of $16,019.50 and other income of $7,676. Petitioner was not married during the years in issue. Petitioner did not have any children, nor has he established that he supported anyone else's children during the years in issue. Petitioner had unreported interest income from moneylending in 1973 and 1974, and unreported massage parlor income in 1974, in the amounts determined by respondent. OPINION Petitioner's "Wife" and "Children"
*22 We first examine to what extent petitioner's criminal conviction precludes us from considering evidence in his favor on issues regarding his alleged wife and children. Where a question of fact essential to the judgment is actually litigated and determined in the first proceeding, the parties are bound by that determination in a subsequent proceeding even though the cause of action is different. Commissioner v. Sunnen,333 U.S. 591, 601 (1948). Petitioner was convicted of willfully and knowingly subscribing materially false 1971, 1972, and 1973 income tax returns in violation of section 7206(1). [3] The indictment under which petitioner was convicted charged: [T]he defendant falsely claimed therein that he was married and had children * * * whereas, * * * as GEORGE OCHS * * * then and there well knew, he was not married, did not have any children and was therefore not entitled to claim any income tax exemptions for a wife and children. *23 The question of whether petitioner had a wife and children during 1971, 1972, and 1973 was essential to the jury's finding that he violated section 7206(1). Therefore, the parties are bound by that determination in this proceeding. At trial of the instant case, petitioner attempted to discredit the verdict in his criminal trial. He sought to establish that witnesses who would have testified favorably to him in his criminal case (i.e., that they had seen him with a woman he called his "wife" and her children) were improperly prevented by the prosecutor or by petitioner's own counsel from testifying. These are the very charges petitioner made in his motion for a new trial which was denied by the District Court and affirmed on appeal. United States v. Ochs,548 F. Supp. 502 (S.D.N.Y. 1982), affd. in unpublished opinion 742 F.2d 1444 (2d Cir. 1983), cert. denied 464 U.S. 1073 (1984). A civil proceeding is an inappropriate vehicle for a collateral attack on a previous criminal proceeding. [4]
*24 We therefore disregard all testimony regarding petitioner's alleged wife and children pertaining to 1971, 1972, and 1973, and find that he did not have a wife or children during those years. Petitioner was therefore not entitled to file joint returns or to use "married filing jointly" rates in 1971, 1972, and 1973. He is not entitled to claim dependency exemptions for a wife and children in 1971, 1972, and 1973. For 1970, however, petitioner is not estopped from offering proof of his entitlement to joint filing status, joint rates, and exemptions for a wife and children. We find, however, that he has not met his burden of proof on these issues. Petitioner admits he was not legally married to Marilyn at any time He claims to have met her in 1970 and to have lived with her as man and wife, together with her children, until 1975. Petitioner testified that Marilyn was an illegal alien from Canada, was legally married to a Canadian who was the father of her children, and that she returned to her husband in Canada when petitioner was arrested. Petitioner's claim of having a common law marriage must fail. New York, the state of petitioner's residence, does not recognize common *25 law marriage. See N.Y. Dom. Rel. Law § 11 (McKinney 1977). Moreover, Marilyn was already married to another. We know of no state that recognizes bigamous common law marriages. Petitioner is therefore not entitled to joint filing status or joint rates for 1970. Further, Marilyn cannot be claimed as a dependent. She would have to qualify under section 152(a)(9), i.e., as an individual for whom petitioner provided over half the support and who "has as [her] principal place of abode the home of the taxpayer and is a member of the taxpayer's household." Marilyn is disqualified on these grounds. First, there is no evidence that petitioner provided over half of Marilyn's support in 1970. Beyond that, however, petitioner is barred by section 152(b)(5): An individual is not a member of the taxpayer's household if at any time during the taxable year of the taxpayer the relationship between such individual and the taxpayer is in violation of local law. Petitioner's adulterous relationship with Marilyn is a misdemeanor under N.Y. Penal Code § 255.17 (McKinney 1977). Finally, in order for an unrelated individual to qualify as a dependent under section *26 152(a)(9), such person must live with the taxpayer and be a member of his household throughout the entire taxable year. Section 1.152-1(b), Income Tax Regs.; Trowbridge v. Commissioner,268 F.2d 208 (9th Cir. 1959), affg. per curiam 30 T.C. 879 (1958); McMillan v. Commissioner,31 T.C. 1143, 1145-1146 (1959). [5] Since petitioner claims to have met Marilyn during 1970, it follows that she was not a member of his household throughout the entire year. Therefore, petitioner may not claim a personal exemption for Marilyn for 1970. Further, since petitioner introduced no evidence that he provided more than half of any child's support, or that they resided with him throughout the year, he is likewise precluded from claiming any children as dependants for 1970. Unreported Interest Income
Petitioner reported no interest income for 1973. He reported $560 interest income for 1974. Respondent determined that petitioner received unreported interest income of $1,573 in 1973 and $16,019.50 in 1974. Petitioner *27 has the burden of showing this determination is wrong. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioner admitted he received interest income, but he characterized his lending activities thus: I was a philanthropist, Your Honor, if you want to get down to it. If anybody came along, I helped them. What do I care, I'm happy go lucky, I give it to them. Really money it doesn't matter to me. Petitioner claimed the payments he received should have been allocated first to principal, and that he "never even got the principal back on this here stuff." He admitted, however, "There is some interest that I did get back on some of the loans, small loans, out of the graciousness of their heart because I helped them out, so they give me another $100 or $200 or $50 or whatever it might be." This testimony contrasts sharply with the jury's finding in petitioner's criminal case that he threatened to murder a prostitute who worked in his massage parlor, for failure to make interest payments on a usurious loan. See United States v. Ochs,595 F.2d 1247, 1251, and 1261 (2d Cir. 1979). We do not believe petitioner's motives were selfless or *28 that people paid him interest out of generosity. Petitioner's witness Joseph Erskine testified that petitioner loaned him money but did not "Shylock" him. He did not say how much interest he paid petitioner. Otto Narday testified that he still owes petitioner some money. As to interest, Narday said, "I made the offer -- when I paid back the money I probably gave him [petitioner] additional money on top of it." If anything, this testimony substantiates that petitioner received interest income. We also note that Mr. Erskine has been petitioner's personal friend for over 40 years, and that Mr. Narday still owes petitioner money. We take their potential biases into account in weighing their credibility. Other than his own general statements petitioner introduced no evidence to show that respondent's allocation of payments to interest and principal was wrong. Mr. Narday testified there was no prearrangement as to interest. This supports respondent's attribution of payments to interest first, which is permissible in the absence of any agreement to the contrary. Spang Industries, Inc. v. Aetna Casualty & Surety Co.,512 F.2d 365 (2d Cir. 1975); Rodney v. Commissioner,53 T.C. 287 (1969). *29 We sustain respondent's determination regarding unreported interest in 1973 and 1974. Other Income
Petitioner reported $25,000 in "other income" in 1974. Presumably, this was income from "Studio One," a massage parlor. Respondent determined that in 1974 petitioner received an additional $7,676 from this source. Petitioner does not deny he ran a massage parlor business in 1974. His only objection to respondent's determination was to allege that respondent did not take expenses into account. However, exhibits B-1 and B-2 to the statutory notice show that expenses were taken into account. Rental expense of $1,000 a month was allowed. Petitioner's testimony about the amount of rent was confusing. At one point he said "They [respondent] don't have other expenses like the rent that we had to pay, $3,000 or $2,000 a month * * *." Later he said "I know how much rent it was, it was $1,666.66 at that time. Originally it was only about $900 or $1,000 a month and then my landlord boosted it up almost another $1,000 to $1,666." Given the amount of time that has expired, it is likely that petitioner's memory regarding the rent in late 1974 is faulty and that the increase to *30 $1,666.66 took place in 1975. Petitioner has not shown that respondent's determination is erroneous. Respondent determined the net income from two months as shown in exhibit B-1 and B-2, attached to the notice of deficiency, and multiplied that figure by six to arrive at a projected annual figure $32,676. This is $7,676 more than petitioner reported as "other income." Since petitioner has admitted Studio One was open during 1974 and has not presented any evidence to conflict with respondent's figures, we accept respondent's method of projection as appropriate. See Pizzarello v. United States,408 F.2d 579 (2d Cir. 1969), cert. denied 396 U.S. 986 (1969). Fraud
Petitioner's conviction under section 7201 for evading his 1974 income tax liability conclusively establishes fraud in that year. Moore v. United States,360 F.2d 353 (4th Cir. 1965), cert. denied 385 U.S. 1001 (1967); Rodney v. Commissioner,53 T.C. 287 (1969); Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). However, his convictions in 1971, 1972, and 1973 for willfully making *31 a false statement in an income tax return under section 7206(1) do not estop him from denying that any underpayments were due to fraud. Wright v. Commissioner,84 T.C. 636 (1985). While not dispositive, such a conviction will be one of the facts considered in a trial on the merits. Respondent has the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b); Rowlee v. Commissioner,80 T.C. 1111 (1983); Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984). Petitioner lied on his income tax return about having a wife and children. We also believed he lied to this Court in the present case. At first he stated that the fourth child (i.e., "Marilyn" who was first listed as a dependent in 1972) was born while petitioner and the mother were together. However, in testimony petitioner exhibited great confusion about which was the fourth child: THE COURT: How many children were there? MR. OCHS: At first there were only the three of them and then there was four later on. The older one was a daughter, she was about -- at that time I guess 7, 8 years old. Today *32 I guess she's 17. So I met her [Marilyn, Sr.] in the store, we started to live together and like I said at that time there were three children. THE COURT: How long were you together? MR. OCHS: About maybe four years, Your Honor, about '75 is when she left because of this trouble, I didn't want her to get in trouble. THE COURT: The fourth child, was that your child? Was that her child? MR. OCHS: You see when I started to go out with her -- the child actually I think was mine at that time because when I first met her there were three. It might have been from her marriage because she came from Canada. She was an illegal alien and she didn't want to get involved. * * * THE COURT: * * * When was the fourth child born, let me ask you that? MR. OCHS: That was -- she went back to Canada a couple of times, then she come back, I think that was in 1973, Your Honor, or '72, either one, I'm not sure, around that date. Under cross-examination petitioner testified as follows: Q. And three of the children were not yours? A. Three were not mine. * * * Q. Mr. Ochs, what are the names of the three children that you claimed on your 1970, 1971 -- A. William, Alexander *33 and Marilyn. Which year? Q. '70 and '71. A. Is it on here? Have you got it written down here. It's George, William and Alexander, what I said. Q. Mr. Ochs, is William your middle name? A. William is my middle name, right. Q. What was your father's name? A. My father's name was William too. Q. And did you have a grandfather named Alexander? A. Absolutely, so was Alexander Hamilton named Alexander. I know what you're getting at. THE COURT: Just answer the question. Q. Mr. Ochs, you stated that the fourth child was born in 1972 or 1973. A. Around there. Q. And her name was Marilyn. A. Yes. Q. Mr. Ochs, didn't you also state that Marilyn was about seven or eight years old at the time? A. Well it was one of the what do you call it that stated that -- now you're going all the way back on that thing there. Marilyn was born -- George, William and Alexander were her three children, I think, at that time. She was the one that came down from -- Marilyn was the one that came down from Canada later on when she went up there, that's what it was and then she comes back to the United States. That's how that went down. I believe, if I'm correct -- *34 if I'm not mistaken, I believe that's the way it was. We cannot believe that a man could live with three or four children for a 5-year period in his life, and not know whether one of them was born during that period or was already of school age. We think these children were invented by petitioner solely to evade tax. Respondent has sustained his burden of proving fraud for 1971, 1972, 1973, and 1974 and petitioner is therefore liable for additions to tax under section 6653(b) for each of the years in issue. Failure to Pay Estimated Tax
Respondent determined that petitioner is liable for an addition to tax under section 6654 in 1974 for his failure to pay estimated tax. Petitioner has the burden of proof on this issue. Rule 142(a). Petitioner presented no evidence on this issue, therefore, respondent's determination is sustained. Because of respondent's concession of the fraud addition for 1970, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as in effect during the years in issue.↩
2. On brief, respondent abandoned the addition to tax for fraud for 1970, for lack of proof.↩
3. Sec. 7206. FRAUD AND FALSE STATEMENTS. Any person who -- (1) Declaration under penalties of perjury. -- Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter; * * * shall be guilty of a felony * * *↩
4. See, e.g., Armstrong v. United States,354 F.2d 274↩ (Ct. Cl. 1965) (fraud addition must be upheld for years for which taxpayer was collaterally estopped from denying fraud due to evasion convictions, despite the admission of evidence regarding those years and the court's independent conclusion, on the basis of the evidence, that there was no intent to evade tax.)
5. No "special circumstances" exist here, nor was Marilyn born or deceased in 1970. See sec. 1.152-1(b), Income Tax Regs.↩