T.C. Memo. 1998-444


UNITED STATES TAX COURT


IRENE E. JONES, a.k.a. IRENE E. PERRY-JONES, a.k.a.
IRENE E. PERRY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26719-96.          Filed December 21, 1998.


Irene E. Jones, pro se.

<u>Carol-Lynn E. Moran</u>, for respondent.


MEMORANDUM OPINION

WRIGHT, <u>Judge</u>:  This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183.  All section references are to the Internal Revenue Code in effect for the tax years in issue, unless otherwise indicated.  All Rule references are to

the Tax Court Rules of Practice and Procedure.  The Court agrees

with and adopts the opinion of the Special Trial Judge, which is

set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, Special Trial Judge:  Respondent determined

deficiencies in petitioner's Federal income taxes for the taxable

years 1993 and 1994, additions to tax for failure to file timely

Federal income tax returns pursuant to section 6651(a)(1), and

accuracy-related penalties for negligence as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|---|---|---|---|
| 1993 | $6,333 | $1,165 | $1,267 |
| 1994 | 7,550 | 1,338 | 1,510 |

After concessions by both parties,[1] the issues for decision

with respect to petitioner's taxes for 1993 and 1994 are:  (1)

Whether petitioner is entitled to claim her daughter, Melanie

Roberts, also known as Melanie Stroman, and Nicole Roberts,

Melanie Roberts' daughter and petitioner's granddaughter, as

dependents; (2) whether petitioner is entitled to head of

household filing status; (3) whether petitioner overstated her

itemized deductions by $28,565 and $19,061 on Schedule A of her

---

[1]    The parties stipulated that petitioner is not entitled to a
dependency exemption for Latoya Roberts for the taxable years
1993 and 1994.  During the trial, respondent conceded that
petitioner was entitled to deductions for union dues for the
taxable years 1993 and 1994 in the amounts of $971.76 and $1,163,
respectively.

Federal income tax returns for the taxable years 1993 and 1994, respectively; (4) whether petitioner is liable for additions to tax under section 6651(a)(1) for 1993 and 1994 for failure to file returns timely; and (5) whether petitioner is liable for the accuracy-related penalties under section 6662(a) for 1993 and 1994.

The evidence in this case consists of a stipulation of facts with attached exhibits (incorporated herein by reference) and oral testimony and exhibits admitted during the trial. When the petition was filed, petitioner resided in Blue Bell, Pennsylvania.[2]

### Background

On July 29, 1994, petitioner filed her 1993 Federal income tax return on which she identified her filing status as head of household and claimed dependency exemptions for the following three individuals: Latoya Roberts (hereinafter Latoya), Nicole Roberts (hereinafter Nicole), and Melanie Roberts (hereinafter Melanie). On July 17, 1995, petitioner filed her 1994 Federal income tax return on which she again identified her filing status as head of household and claimed dependency exemptions for the same three individuals. Melanie, also known as Melanie Stroman,

---

[2] In her petition, petitioner also requested a redetermination of deficiencies relating to the 1991 taxable year. The petition with respect to the 1991 year subsequently was dismissed for lack of jurisdiction by an order of this Court dated July 17, 1997.

is petitioner's daughter and was 34 years old in 1994. Nicole and Latoya are Melanie's daughters and petitioner's granddaughters. In 1994, Latoya was 18 and Nicole was 13 years of age. Petitioner conceded prior to trial that she is not entitled to a dependency exemption for Latoya for 1993 and 1994. Petitioner claims that she provided over one-half of the support for Melanie and Nicole during the years in issue. Petitioner claimed head of household status for 1993 and 1994 based upon her contention that she provided the principal place of abode for Melanie, Nicole, and Latoya during those years.

In 1966, petitioner married Lee Perry. She became legally separated from Lee Perry in 1970 and divorced him in July 1994. Petitioner married James Jones in August 1994. During the trial, petitioner introduced into evidence numerous checks from a joint checking account she maintained with James Jones. Many of the checks were written prior to the time petitioner remarried. Mr. Jones did not testify during the trial of this case.

At trial, petitioner produced 30 canceled checks from the joint checking account payable to various clothing and department stores.[3] Petitioner claimed that the checks represented payments for items purchased on behalf of Melanie and Nicole during 1993

---

[3]     Most of petitioner's checks were payable to the following stores: Strawbridge and Clothier, J.C. Penney, Lane Bryant, Dress Barn, Clover, Macys, and Wanamakers, and many of the checks were for payments on store charge cards.

and 1994.  In her testimony, petitioner implied that she had incurred additional expenses on behalf of Melanie and Nicole, but these were the only canceled checks she was able to find the night before the trial.  Of petitioner's 30 canceled checks, only 1 check bore a date in 1993.  Petitioner submitted no other evidence of any financial support she provided to her daughter and granddaughter.  Petitioner explained at trial:  "we don't think that everything we do for our children we must write down.  We don't do that.  We don't keep receipts."

From 1993 through 1995, the Philadelphia Housing Authority (hereinafter PHA) provided subsidized housing for Melanie, Nicole, and Latoya.  PHA paid rent of approximately $600 monthly for housing for these individuals during 1993 and 1994.

Melanie, Nicole, and Latoya stayed at petitioner's residence off and on for as much as 1 or 2 months at a time during 1993 and 1994.  Petitioner was not able to provide the exact dates that they lived with her.  Petitioner estimated that her daughter and two granddaughters lived with her approximately half of the time during 1993 and 1994.  Neither Melanie, Nicole, nor Latoya testified on behalf of petitioner during the trial.

Petitioner does not dispute that Melanie received public housing assistance during the years in issue.  However, she claims that Melanie was involved in an abusive relationship that caused her and her daughters to flee their home for the security

of petitioner's residence. According to petitioner, during those periods, Melanie's boyfriend would remain in residence at the property provided for Melanie by the PHA. Such occupation by an unauthorized person was contrary to Melanie's lease on the property and also contrary to Federal laws concerning PHA operations.

During the years in issue, petitioner was employed as a staff representative in the District Council 88 Office of the American Federation of State, County, and Municipal Employees (hereinafter AFSCME). AFSCME is a union that represents public employees. Petitioner's job as a staff representative required her to travel to various work sites and speak with the union members at each location.

The testimony of Jesse M. Evans (Evans), who is employed by AFSCME as the business manager of Council 13 for the State of Pennsylvania, establishes that AFSCME had two different methods of paying for petitioner's job-related travel. The first method was through the provision of an automatic travel allowance that was included in petitioner's paycheck. The travel allowance is a taxable allowance for which petitioner was not required to provide any receipts to receive payment. The travel allowance consisted of a car allowance, an in-town per diem, and an allowance for car insurance. Petitioner received travel allowances of $10,249.96 and $10,489.96 for 1993 and 1994,

respectively.  Petitioner's travel allowances for 1993 and 1994 included annual payments of $1,150 for car insurance.

The second method of travel expense reimbursement was a direct travel subsidy.  AFSCME directly reimbursed petitioner for actual travel expenses she incurred.  At the beginning of every month, petitioner was reimbursed for any gasoline, oil, public transportation, tolls, air fare, meals, car leasing, and entertainment expenses she had incurred the previous month, as long as she had the necessary receipts.  When petitioner was required to travel out of town, she received an additional $32 per day travel allowance.  Petitioner was reimbursed for substantial expenses during 1993 and 1994.  Furthermore, Evans' testimony establishes that if petitioner had provided additional receipts, at a later date, for expenses that qualified for reimbursement, she would have been reimbursed for those expenditures.

To receive reimbursement for her travel expenses, petitioner was required by her employer to maintain a daily travel log that included the travel location and the departure and arrival locations.  The daily travel log included sick days, vacation days, and holidays.  Among the items employees were required to document on the daily travel log were beginning and ending odometer readings, gas, oil, parking, public transportation, and entertainment expenses.  During the trial, petitioner submitted

additional receipts for alleged unreimbursed travel expenses from 1993 and 1994. Petitioner testified that she had not presented these receipts to her employer for reimbursement at the appropriate time because her director required all receipts to be submitted at one time, and she found these additional receipts at a later date. The additional receipts submitted by petitioner include receipts for gasoline, parking, tickets to various social functions, meals, a visit to a doctor's office, and prescription drugs.

Petitioner claimed the following employee expenses on Schedule A of her 1993 Federal income tax return:

| | |
|---|---|
| Union dues | $1,194 |
| Professional dues | 67 |
| Equipment and supplies | 1,050 |
| Form 2106 expenses: | |
| Parking fees, tolls, etc. | 13,779 |
| Travel expenses while away from home | 2,181 |
| Other business expenses | 6,350 |
| Meals and entertainment | 2,490 |
| | 27,111 |

Petitioner claimed a charitable contribution deduction in the amount of $2,054 on Schedule A of her 1993 Federal income tax return. She also claimed the following other expenses on Schedule A of her 1993 Federal income tax return:

| | |
|---|---|
| Tax consultation | $250 |
| Publications | 65 |
| Safe deposit box | 30 |
| | 345 |

Respondent disallowed all of the above-listed expenses. The only items respondent allowed from Schedule A of petitioner's 1993 Federal income tax return were State taxes in the amount of $1,395. Since the amount of itemized deductions allowed by respondent was less than the standard deduction amount of $3,100, petitioner was allowed the standard deduction in the deficiency notice for 1993.

Petitioner claimed the following employee expenses on Schedule A of her 1994 Federal income tax return:

| | |
|---|---:|
| Union dues | $1,194 |
| Professional dues | 320 |
| Equipment and supplies | 687 |
| Form 2106 expenses: | |
|   Parking fees, tolls, etc. | 4,167 |
|   Travel expenses while away from home | 3,213 |
|   Other | 3,104 |
|   Meals and entertainment | 501 |
| | 13,186 |

Petitioner claimed a charitable contribution deduction in the amount of $6,467 on Schedule A of her 1994 Federal income tax return. She also claimed the following other expenses on Schedule A of her 1994 Federal income tax return:

| | |
|---|---:|
| Tax consultation | $245 |
| Safe deposit box | 35 |
| | 280 |

Again, respondent disallowed all of the above-listed expenses. During the trial, petitioner introduced into evidence a canceled check for $100, payable to Melanie Taylor, and a receipt for $35 for the rental of a safety deposit box during

1994.  According to petitioner, Melanie Taylor and her partner, Byron Fersner, prepared petitioner's Federal income taxes.  The only items respondent allowed from Schedule A of petitioner's 1994 Federal income tax return were State taxes in the amount of $1,580.  Since the amount of itemized deductions allowed by respondent was less than the standard deduction amount of $3,100, petitioner was allowed the standard deduction in the deficiency notice for 1994.

According to petitioner, on November 29, 1991, she was involved in an automobile accident while driving her own car.  Because a car is required for her job, petitioner rented a car from Enterprise-Rent-A-Car (hereinafter Enterprise).  For reasons unexplained in the record, petitioner rented a car from Enterprise from December 1991 through September 1996, rather than leasing or purchasing a car.  According to petitioner, the 1991 automobile accident resulted in litigation that was still pending at the time of this trial.   At trial, petitioner submitted canceled checks from her joint checking account with Mr. Jones for 1993 and 1994 payable to Enterprise in the amounts of $263.79 and $5,275.19, respectively.  Petitioner's expense report for March 1993 indicates that petitioner was reimbursed $1,350 by her employer for the rental car.  Petitioner admits that she was reimbursed to the extent of $1,350, but contends that the

reimbursement relates back to expenses she incurred for a rental car prior to March 1993.

Petitioner admits that she utilized the rental car for personal as well as business uses. Petitioner conceded using the rental car for shopping trips, transportation to Masonic conventions, trips to church, and other trips of a personal nature. The record also indicates petitioner authorized other individuals to drive the rental car.

According to IRS records, petitioner did not file a request for extension of time in which to file her 1993 or 1994 Federal income tax returns. Petitioner claims that one of her tax return preparers informed her that she had filed the required extension requests for both 1993 and 1994. Petitioner further alleges that she never received copies of these extensions from her preparers and therefore is unable to provide the Court with copies of these extensions. Petitioner was unable to locate her tax return preparers prior to trial. On petitioner's 1993 and 1994 Federal income tax returns, the tax return preparer identified his business address as a post office box in Philadelphia, Pennsylvania.

## Discussion

1. Dependency Exemptions

Section 151(c) allows a taxpayer, subject to certain requirements, a deduction for a personal exemption for each of the taxpayer's dependents as defined in section 152. A daughter or a granddaughter of a taxpayer over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, is provided by the taxpayer qualifies as a dependent. Sec. 152(a)(1).

Section 1.152-1(a)(2)(i), Income Tax Regs., provides that in determining whether an individual received over half of his or her support from the taxpayer, "there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources, including support which the individual himself supplied." In Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971), this Court held that, in establishing that more than one-half of a dependent's support has been provided, a prerequisite to such a showing is the demonstration by competent evidence of the total amount of the dependent's support from all sources for that year. If the amount of total support is not established and cannot be reasonably inferred from competent evidence available to the Court, it is not possible to conclude that the taxpayer

claiming the exemption provided more than one-half of the support of the claimed dependent.

Petitioner claimed her daughter, Melanie, and her granddaughters, Nicole and Latoya, as dependents on her tax returns for the 1993 and 1994 tax years. Petitioner has stipulated that she is not entitled to a dependency exemption for her granddaughter Latoya for 1993 and 1994. Respondent determined that petitioner did not provide more than one-half of the support for Melanie and Nicole during 1993 and 1994 as required by section 152.

Petitioner has testified that Melanie and Nicole lived with her off and on during 1993 and 1994. She has failed to provide any substantiation of her testimony and also has failed to provide any means for us to decide how many weeks or months during 1993 and 1994 Melanie and Nicole actually lived with petitioner. We have no reliable information concerning any costs incurred by petitioner in connection with these visits of indeterminate length. Even petitioner's own testimony concerning the extent of the visits is approximate and uncertain.

Both Melanie and Nicole received housing assistance from PHA in the form of rent payments during the years in issue. PHA paid $600 per month in rent for housing occupied by Melanie and Nicole during the time period petitioner claimed them as dependents. In addition, on March 24, 1993, Melanie signed a release authorizing

the PHA to verify that she was receiving a public assistance grant from the Philadelphia County Board of Assistance to help with her other living expenses. There is no evidence in the record that Melanie ceased receiving public assistance grants during 1993 or 1994.

At trial petitioner submitted into evidence numerous canceled checks from petitioner's joint checking account payable to stores for items she claims were purchased on behalf of her daughter and granddaughters. Other than the canceled checks, petitioner could not provide any specifics about items allegedly purchased for Melanie, Nicole, and Latoya. The checks do not indicate what items were purchased or for whom those items were purchased. Furthermore, the checking account used by petitioner is a joint account, so it is unclear whether the purchases were financed by petitioner or Mr. Jones. We do not doubt that petitioner bought clothing and other items for her daughter and granddaughters, but she has failed to show the amount of such purchases. Petitioner has not established the total amount expended from all sources for the support of Melanie and Nicole during 1993 and 1994. She has failed to substantiate her claim that she provided over half of the support for Melanie and Nicole during those years. Accordingly, we hold that petitioner is not entitled to deductions for personal exemptions for those individuals in 1993 and 1994.

2.  <u>Head of Household Filing Status</u>

Section 2(b) provides that a taxpayer may qualify for head of household filing status if that taxpayer is not married at the close of the taxable year and maintains as his or her home a household which constitutes the principal place of abode for more than half of the taxable year for a child of the taxpayer or a descendant of a son or daughter of the taxpayer.  Sec. 2(b)(1)(A)(i).  A taxpayer is considered not married if he or she is legally separated or divorced.  Sec. 2(b)(2)(B).

Respondent's position is that petitioner is not entitled to head of household filing status for either 1993 or 1994 because she did not meet the requirements set forth in section 2(b). Petitioner argues that she is entitled to head of household filing status because she provided the principal place of abode for her daughter and two granddaughters during 1993 and 1994.

Based on the evidence before us, we agree with respondent that petitioner has not established that she has met the requirements for head of household status under section 2(b). The record shows that from 1993 through 1995, the PHA provided the principal place of abode for Melanie, Latoya, and Nicole. Petitioner has conceded that she is not entitled to claim her granddaughter Latoya as a dependent for 1993 or 1994 and apparently has abandoned the claim that Latoya lived with her more than half of either year.  When petitioner was asked to

estimate the amount of time that her daughter Melanie and her granddaughter Nicole lived with her, her response was that they lived with her only about one-half of the time during 1993 and 1994. The record shows that petitioner's daughter Melanie lived in an apartment provided by PHA throughout 1993 and 1994. Petitioner has testified that Melanie was involved in an abusive relationship during those years and sometimes sought refuge at petitioner's home for a month or more at a time. But the apartment always was provided for Melanie and Nicole by PHA during the years in issue and was available to them. Although Melanie and Nicole may have lived with petitioner on and off during the years in issue, we hold on this record that petitioner has failed to prove that she provided their principal place of abode for more than half of the taxable years 1993 and 1994. Accordingly, petitioner has not qualified for head of household status under section 2(b) for 1993 and 1994.

Additionally, section 2(b) requires that a taxpayer not be married at the close of the taxable year to qualify for head of household filing status. Petitioner married Mr. Jones in August 1994, and there is no indication in the record that she and Mr. Jones were separated at the end of 1994, or that they lived apart during the last 6 months of that year. See secs. 2(b)(2), 7703(b). According to the plain language of the statute, in order to be eligible for head of household filing status, a

taxpayer may not be considered as married at the close of the taxable year.  Sec. 2(b)(1).  Therefore, for this reason and the other reasons set forth above, we hold that petitioner is not entitled to head of household filing status for 1994.

3.  Itemized Deductions

Exclusions and deductions from income are a matter of legislative grace and are narrowly construed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers are required to substantiate claimed deductions and credits by maintaining the records needed to establish the amounts of such items.  Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

A.  Unreimbursed Employee Expenses

Section 162(a) permits the deduction of "ordinary and necessary" expenses paid or incurred during the taxable year in carrying on any trade or business.  The performance of services as an employee constitutes a trade or business.  O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988).  An ordinary expense is one that is common and acceptable in the particular business. Welch v. Helvering, 290 U.S. 111, 113-114 (1933).  A necessary expense is an expense that is appropriate and helpful in carrying on a trade or business.  Heineman v. Commissioner, 82 T.C. 538, 543 (1984).

When an employee has a right to reimbursement for expenditures related to her status as an employee, but fails to claim such reimbursement, the employee's expenses are not deductible because such expenditures are not "necessary"; i.e., it is not necessary for an employee to remain unreimbursed for expenses to the extent he or she could have been reimbursed. Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. T.C. Memo. 1984-533; Lucas v. Commissioner, 79 T.C. 1, 7 (1982).

Generally, when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The Court, however, must have some basis upon which an estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Section 274(d) provides that no deduction under section 162 or 212 for travel and meals and entertainment is allowed unless the taxpayer substantiates by adequate records or by sufficient evidence (A) the amount of the expense, (B) the time and place of the travel or entertainment, (C) the business purpose of the expense, and (D) the business relationship to the taxpayer of persons entertained. The Cohan doctrine does not apply to such expenses.

Petitioner claimed employee expenses on Schedule A of her 1993 and 1994 Federal income tax returns in the total amounts of $27,111 and $13,186, respectively.

Petitioner has produced evidence from her employer that she paid union dues in the amounts of $971.76 for 1993 and $1,163 for 1994, and respondent has conceded that these amounts are deductible. With regard to the remaining claimed expenses, petitioner failed to establish that she is entitled to the deductions.

Petitioner offered no explanation concerning the professional dues in the amounts of $67 and $320 that she claimed, respectively, on Schedule A of her 1993 and 1994 Federal income tax returns. There is no evidence in the record that these dues were ordinary and necessary expenses related to her employment.

Petitioner also claimed deductions for "Equipment and Supplies" on Schedule A of her 1993 and 1994 Federal income tax returns in the amounts of $1,050 and $687, respectively. According to petitioner, her professional equipment and supplies consisted of her "three fezzes, two hats, rituals, constitution * * * . The books, the boxes that the fezzes and hats go in, the equipment to keep them a certain way" and other Masonic supplies that she was required to purchase as part of her membership in four fraternal organizations: (1) The Eastern Star; (2) the Cyrenes; (3) the Ladies of the Circle of Perfection; and (4) the Daughters of Isis. Although petitioner undoubtedly purchased certain items related to her membership in these fraternal

organizations, those supplies are not deductible expenses. Petitioner's membership in these fraternal organizations was for her own personal benefit. There is no evidence in the record that, as a staff representative for AFSCME, petitioner was required to belong to any fraternal organization.

The bulk of petitioner's itemized expenses, $24,800 for 1993 and $10,985 for 1994, was included on Form 2106, Employee Business Expenses. Among the expenses petitioner deducted on Form 2106 were parking fees, tolls, travel expenses while away, and meals and entertainment. According to Evans, the business manager of AFSCME, if petitioner had provided receipts for these types of expenses she would have been reimbursed. It is well established in this Court that an employee may not deduct expenses that are subject to reimbursement by the employer. Orvis v. Commissioner, supra; Lucas v. Commissioner, supra at 7.

For the reasons set forth above, except for conceded items, we sustain respondent's disallowance of claimed deductions for unreimbursed business expenses.

B. Charitable Contribution Deductions

Petitioner claimed deductions for cash contributions in the amounts of $2,054 for 1993 and $6,467 for 1994. During the trial, petitioner claimed that many of the unreimbursed employee expenses she had claimed on her 1993 and 1994 Federal income tax returns were actually charitable contributions. She claimed that

the equipment and supplies and some of the travel expenses that she had claimed were on behalf of fraternal organizations.  To support her claim, petitioner presented various checks, receipts, and raffle tickets.

Section 170 allows a deduction for charitable contributions subject to certain limitations.  A charitable contribution is the voluntary transfer of property without adequate consideration. United States v. American Bar Endowment, 477 U.S. 105 (1986); Murphy v. Commissioner, 54 T.C. 249, 252 (1970); Urbauer v. Commissioner, T.C. Memo. 1992-170.  Payments to a qualified charitable organization are deductible as charitable contributions to the extent that they exceed the fair market value of any material benefit received in return.  United States v. American Bar Endowment, supra at 118; Murphy v. Commissioner, supra at 253; Urbauer v. Commissioner, supra.

The checks submitted by petitioner were payment for admission to various conventions and luncheons held by the Eastern Star, Cyrenes, Ladies of the Circle of Perfection, and the Daughters of Isis.  Petitioner described these organizations as "the female side of the Masons" and as fraternal organizations.  A contribution to a domestic fraternal society, order, or association, operating under the lodge system, is only deductible if the contribution or gift is to be used exclusively for religious, charitable, scientific, literary, or educational

purposes, or for the prevention of cruelty to animals. Sec. 170(c)(4). Petitioner has failed to establish that these donations were used exclusively for the purposes specified in section 170(c)(4). Additionally, she has failed to establish that the amounts she paid for these events exceed the fair market value she received. Furthermore, payments for raffle tickets generally do not qualify as charitable contributions. Goldman v. Commissioner, 46 T.C. 136 (1966), affd. 388 F.2d 476 (6th Cir. 1967).

If a taxpayer makes a charitable contribution of money, the taxpayer must maintain for each contribution either (1) a canceled check, (2) a receipt from the donee organization, or (3) other reliable written records. Sec. 1.170A-13(a)(1), Income Tax Regs. Although petitioner did provide the Court with many checks and receipts, these items do not support her claims. The receipts and checks provided by petitioner show amounts paid to fraternal organizations. Some receipts lack the payee's name. As discussed above, petitioner has failed to establish that these amounts were donated for a charitable purpose. Petitioner has not provided us with sufficient documentation to substantiate the charitable contribution deductions she claimed on her 1993 and 1994 Federal income tax returns.

For the foregoing reasons, we hold that petitioner is not entitled to the deductions for charitable contributions she claimed for 1993 and 1994.

C.  Other Expenses on Schedule A

Petitioner claimed the following other expenses on Schedule A of her 1993 Federal income tax return:

| | |
|---|---:|
| Tax consultation | $250 |
| Publications | 65 |
| Safe deposit box | 30 |
| | 345 |

Petitioner claimed the following other expenses on Schedule A of her 1994 Federal income tax return:

| | |
|---|---:|
| Tax consultation | $245 |
| Safe deposit box | 35 |
| | 280 |

Petitioner provided a $35 receipt from Corestates Bank indicating payment of the 1994 safe deposit box rental fee; and we accept her claim that a $30 payment was made for the same purpose in 1993.  Petitioner also provided a canceled check for $100, payable to Melanie Taylor, one of petitioner's tax preparers.  Petitioner's tax returns were not signed by Melanie Taylor, but only by Byron Fersner.  Nevertheless, we accept petitioner's testimony that the payment was for tax preparation fees for 1994, and we also allow her claim for a similar payment in 1993.  Accordingly, we hold that petitioner is entitled to deduct the safe deposit box rental fees of $30 for 1993 and $35 for 1994 and $100 in tax preparation fees for each of the years

1993 and 1994. We sustain the disallowance of the balance of the above-listed deductions for lack of substantiation.

4. <u>Section 6651(a)(1) Additions to Tax</u>

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required return on or before the specified filing date, including extensions. The addition to tax is inapplicable if the taxpayer shows that the failure to file the return was due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1). Generally, individuals are required to file on or before the 15th day of April following the close of the calendar year. Sec. 6072(a).

Petitioner filed her 1993 and 1994 Federal income tax returns on July 29, 1994, and July 17, 1995, respectively. According to respondent's records, petitioner did not file an extension of time in which to file her 1993 or 1994 Federal income tax returns. Petitioner contends that she relied upon statements made by her tax preparer, who informed her that extensions for 1993 and 1994 years were filed on her behalf. At trial, petitioner was unable to furnish any evidence showing that extensions for 1993 and 1994 had been filed or any correspondence with a tax return preparer on the subject. Petitioner's failure to make timely filing of her tax returns is not excused by her alleged reliance on an agent, and such reliance is not reasonable cause for a late filing under section 6651(a)(1). <u>United States</u>

v. Boyle, 469 U.S. 241 (1985); Radabaugh v. Commissioner, T.C. Memo. 1992-572.  Therefore, we hold that petitioner is liable for additions to tax under section 6651(a)(1) for the years 1993 and 1994.

5.  Section 6662(a) Penalties

Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to negligence or disregard of rules or regulations.  Sec. 6662(b)(1). Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Based on this record, we hold that petitioner was negligent and disregarded rules or regulations.  Accordingly, she is liable for the accuracy-related penalties under section 6662(a) for 1993 and 1994.

To reflect the concessions and our conclusions on the disputed issues,

Decision will be entered

under Rule 155.